UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated, | ) ) | Case No. |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| METHODE ELECTRONICS, INC., DONALD W. DUDA, and RONALD L.G. TSOUMAS, | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Marie Salem ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Methode Electronics, Inc. ("Methode" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of Methode common stock between June 23, 2022 and March 6, 2024, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act") against Methode and certain of the Company's senior officers and directors.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and §27 of the 1934 Act, because Methode is headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

4.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

5.    Plaintiff Marie Salem, as set forth in the certification attached hereto and incorporated by reference herein, purchased Methode common stock during the Class Period and suffered damages as a result.

6.    Defendant Methode, headquartered in Chicago, Illinois, designs, engineers, and produces mechatronic products for Original Equipment Manufacturers ("OEMs").  Methode common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "MEI."

7.    Defendant Donald W. Duda ("Duda") was Chief Executive Officer ("CEO"), President, and a director at Methode from the start of the Class Period until January 2024.

8.    Defendant Ronald L.G. Tsoumas ("Tsoumas") was the Chief Financial Officer ("CFO") of Methode until July 2024.

9.    Defendants Duda and Tsoumas are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, together with Methode, are referred to herein as "defendants."

10.    Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, acquisition plans, and present and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of,

or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the 1934 Act and trade on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, services, markets, competition, acquisition plans, and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Methode publicly traded common stock would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance, participated in conference calls with investors during which false and misleading statements were made, and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## BACKGROUND

13.     Methode designs, engineers, and manufactures custom-engineered solutions for OEMs.  The Company's products are found in the end markets of transportation, cloud computing

infrastructure, construction equipment, consumer appliances, and medical devices. Methode maintains manufacturing facilities in the United States, Europe, China, Egypt, Malta, and Mexico.

14.     The Company breaks its operating results into four reportable segments: (i) Automotive; (ii) Industrial; (iii) Interface; and (iv) Medical. Methode's Automotive segment (the "Automotive Segment") generates the majority of the Company's revenues. For the fiscal year ended April 30, 2022, the Automotive Segment accounted for over 67% of Company net sales.[1] The Automotive Segment supplies electronic and electro-mechanical devices and related products – such as integrated center consoles, hidden switches, ergonomic switches, transmission lead-frames, LED-based lighting, and sensors – to automobile OEMs or their suppliers.

15.     In November 2010, Methode received a significant boost when the Automotive Segment was awarded the General Motors ("GM") center console program. Starting in 2014, the program was projected to add $100 million in revenue per year. The award contributed to the critical importance of center console production to the Company's business, revenue, and prospects. For example, for fiscal year 2016 (the year that the GM award achieved full production) sales to GM represented approximately 50% of the Company's consolidated net sales, which consisted primarily of sales to GM of integrated center consoles for use in trucks and SUVs. The Company's center console production was substantially done out of its Monterrey, Mexico facility.

16.     By 2020, Methode began transitioning away from its reliance on traditional integrated center stack units due to changes in automotive trends and technologies. Specifically, car manufacturers had begun using fewer designs featuring traditional buttons and knobs and instead used displays with a greater focus on integrating control functions into the display itself, such as touch screen infotainment applications. As a result, over the next several quarters the

---

[1]     The Company's fiscal year ends on the Saturday closest to April 30 of the calendar year.

Company shifted its production away from a relatively low mix, high volume production of relatively standardized center consoles for a few vehicle manufacturers such as GM to a high mix, low volume production of more specialized components for a wider variety of vehicle manufacturers, in particular manufacturers of electric vehicles ("EVs"). Although the change would initially result in lower unit sales, defendants claimed that these lost sales would be offset by higher margins on the more specialized components sold by the Company, as well as other OEM awards secured by the Company in the EV space. Defendants also praised the strategy shift as lowering concentration risk because it allowed Methode to diversify away from its dependence on GM.

17.     On a March 2020 conference call, defendant Duda highlighted this transition, stating that Methode planned to phase out integrated center stack production over the next five years as it ramped up its EV offerings. Defendant Duda assured investors that "going forward, our higher-margin product mix will more than offset any potential decline in operating income from what we must now consider a legacy product." Defendant Duda pointed to the $105 million in new business the Company had booked so far in the year, which he claimed provided "great comfort that our strategy there [has begun] to pay off."

18.     Leading up to and during the Class Period, defendants continued to represent that Methode's transition into new business opportunities, in particular in the EV space, and away from its legacy center console business was progressing well, including the retooling of its Monterrey facility to support the transition to building new, more specialized components and to service new EV program awards. For example, during a December 2, 2021 conference call, defendant Duda stated that "business awards over the last couple of years have put us on track in [the] aggregate to replace the sales from the roll off of this truck [center console] program," in particular in higher margin EV categories. Similarly, during an August 10, 2022 conference call, defendant Duda

stated that the launch of new EV programs in North America was being effectively implemented at the Monterrey facility, highlighting the Company's "manufacturing system" as having "the same quality system" across its operations, which allowed the Company to keep its "cost of quality . . . low." Defendant Tsoumas added: "So we really feel good about . . . how we're structured to manufacture all of our products," which at the time included most prominently new EV product launches. As a result of the purported success of this transition, defendants claimed that Methode was on track to achieve a 3-year organic sales compound annual growth rate ("CAGR") of 6%, taking into account relevant program roll-offs.

19. Unbeknownst to investors, however, defendants' representations during the Class Period were materially false and misleading when made, as defendants knew or recklessly disregarded that the Company's transition away from its lucrative and dependable GM center console business and into a more diversified mix of product lines with a focus on higher margin, more specialized components had been plagued with operational, logistical, and personnel challenges that were negatively impacting the Company's business and revenue growth.

20. Specifically, the Company's Monterrey facility was suffering from major setbacks during the transition caused by personnel turnover in the wake of the COVID-19 pandemic, poor operational decisions, vendor issues, and supplier changes that had led to production planning deficiencies, inventory shortages, and, ultimately, botched execution of the Company's strategic plans. For example, the Company's new systems failed to accurately estimate delivery times for necessary raw materials, forcing the Company to scramble to buy replacement materials at higher spot prices and to pay premium freight charges for rushed deliveries. At times, engineering changes were not properly recorded in Company systems so product manufactured in China and shipped to Monterrey did not match worker expectations. In addition, abrupt scheduling changes put stress on the Company's quality controls and systems, and leaner inventory exposed

operational deficiencies. The Company also suffered ballooning costs and delayed program launch dates as it attempted to retool the Monterrey facility to offer a broader mix of more specialized components and phase out the GM center console program. As a result of these issues, which had materially undermined the Company's operational capabilities, the Company was nowhere near the 6% 3-year organic sales CAGR highlighted by defendants during the Class Period and such statements lacked an objective factual basis.

21.     Defendants' failure to disclose the adverse facts detailed herein regarding problems at the Company's Monterrey facility and efforts to transition away from the GM center console program caused Methode stock to trade at artificially inflated prices during the Class Period. Following a series of corrective disclosures, the price of Methode stock dropped precipitously from a Class Period high of over $50 per share to less than $10 per share by mid-June 2024 – a decline of more than 80% – causing Class members (defined herein) to suffer hundreds of millions of dollars in financial losses and economic damages under the federal securities laws.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS ISSUED DURING THE CLASS PERIOD**

22.     The Class Period begins on June 23, 2022. On that date, Methode issued a press release announcing the Company's financial results for its fourth fiscal quarter and full year 2022 ("4Q/FY22 Release"). The release stated that the Automotive Segment had $194.3 million in net sales and $17.2 million in income from operations for the quarter. For fiscal 2022, the release stated that the Company had $1.16 billion in consolidated net sales and $102.2 million in net income. The release reaffirmed the Company's fiscal 2023 guidance of a diluted earnings per share ("EPS") range of $2.70 to $3.10. The release further announced a 6% 3-year organic sales CAGR. Defendant Duda was quoted in the release as stating: "'[W]e booked another quarter of awards with over $100 million in annual sales, with approximately 90% in EV applications, and delivered record sales for the full year.'" He continued: "'[W]e expect continued sales growth as

well as renewed earnings growth in fiscal 2023. . . . This [6% CAGR sales] target is enabled by our strong run of program awards over the past two years, particularly with electric vehicles.'"

23.     On that same day, Methode held an earnings conference call with analysts and investors to discuss Methode's fourth fiscal quarter and full year 2022 results hosted by defendants Duda and Tsoumas.  In his prepared remarks, defendant Duda stated that the Company "had another very strong quarter with over $100 million in program awards," with 90% being for EV applications.  Defendant Duda brushed off supply chain challenges and market disruptions that had temporarily impacted earnings, stating he was "confident" that "Methode is positioned to mitigate these pressures and deliver sales and earnings growth for fiscal 2023."  Further, defendant Duda announced that "[w]ith the strong award pipeline for the past 2 years and the effort Methode has made to diversify its product portfolio . . . we are now confident to announce a 3-year organic sales compounded annual growth rate target of 6%."  He represented that "[t]his target demonstrates that our business model is not just healthy, but as prospering from the strategic step that we have taken to grow the business."  Defendant Duda added: "Looking beyond 2023, we are confident in our strategy and our award pipeline continues to be robust," which he stated "firmly puts Methode on a path to deliver on our 6% compounded annual sales growth target over the next 3 years."

24.     In his opening remarks during the conference call, defendant Tsoumas stated that the anticipated growth at the midpoint of Methode's 2023 revenue guidance range "considers the impact of the GMT1 [center console] roll-off" that had "over $100 million" in sales in fiscal year 2022.  Defendant Tsoumas further stated that the 6% 3-year sales CAGR was "based on the strong bookings we have realized over the past 2 fiscal years" and "takes into account the anticipated roll-off of the relevant programs and reinforces our organic growth strategy is putting the company on a nice future organic growth trajectory."

- 8 -

25.     Also on June 23, 2022, Methode filed with the SEC a Form 10-K for the fiscal year ended April 30, 2022, which was signed by the Individual Defendants.  The Form 10-K contained the financial information regarding Methode's fourth fiscal quarter and full year 2022 financial results contained in the 4Q/FY22 Release.

26.     On August 10, 2022, defendants Duda and Tsoumas participated in the JPMorgan Auto Conference.   During his prepared remarks to investors, defendant Duda highlighted Methode's "vertically integrated manufacturing locations in North America," and elsewhere, which purportedly provided a "cost-effective footprint . . . strategically located in proximity to key customers."  He praised the Company's "vertically integrated manufacturing with world-class quality," which had allowed Methode to "grow by capitalizing on EV and other market growth trends" and giving it "confidence to guide to a 3-year annual growth rate target of 6%."

27.     Later during his prepared remarks, defendant Duda singled out the Company's transition from the GM center console business to its launch of new EV applications, stating the EV sector provided a "definite organic growth tailwind for Methode," and further stating in pertinent part:

> In EV, it is quickly growing and approaching half of our product sales into EV applications.
>
> Consequently, Methode is a clear opportunity to incrementally grow our content per vehicle with the industry's transition to EVs.  ***As I mentioned earlier, our content in EV can be more than double our content on an internal combustion vehicle.  EV is a definite organic growth tailwind for Methode.  In addition to driving growth, our EV as well as our commercial vehicle businesses have helped further our customer diversification***.
>
> While General Motors has been and is expected to continue to be a good customer that fueled Methode's historical growth in recent years, we have strategically and systematically broadened our customer base.  Our non-GM business grew to – grew to 77% of our fiscal 2022 sales, up from 50% several years ago.  Consequently, we have become less exposed to the roll-off of any specific customer program.

- 9 -

28.     When asked what provided the Company's "confidence" in its 3-year 6% sales CAGR, defendant Tsoumas replied:

> Regarding the EV proliferation all over the globe, *we we're investing a lot of capital to increase our capabilities and capacity at – in all of the – our geographic [regions]* that they serve as a lot of our customers prefer suppliers, especially now with supply chain to be closer to the customer.

He continued: "So the combination of all those things gives us confidence that we're making the right investments to reap as much growth as we can on a go-forward basis."

29.     Later during the conference, defendants elaborated on the purportedly high-quality output offered by the Company's manufacturing facilities. Defendant Duda stated: "We have – in North America, we have our manufacturing campus in Monterrey, Mexico," as well as two other manufacturing facilities with the same high quality controls in place. He continued by highlighting the purportedly "low" cost of ensuring quality at Company facilities, stating in pertinent part:

> *I think this is very important. We employ the same manufacturing system in the same quality system. The language may change on the storyboard, but the system is the same.*
>
> So a customer that wants that maybe starts purchasing from us in the United States and then wants an overseas supply, they have audit facility, but they'll see the same thing that they see in the United States. *And I think that's been part of our success. And if your cost of quality is low, you throw them more to the bottom line.*

30.     Defendant Tsoumas added: "[A]uto is 67%, 68% of our business. With those campuses that are – have all the rigor and auto hardened, we also manufacture the rest of our products for the most part there as well," which "kind of get a free ride from a quality and then you get into the utilization of the facility and all that." Defendant Tsoumas further stated: "So we really feel good about our geographic footprint and then within that footprint, how we're structured to manufacture all of our products," which included most notably the Company's purported growth driver: new EV program awards.

31.     On September 1, 2022, Methode issued a press release announcing the Company's financial results for its first fiscal quarter of 2023 (the "1Q23 Release"). The release stated that the Automotive Segment had $176.6 million in net sales and $14.7 million in income from operations for the quarter. The release reaffirmed the Company's fiscal 2023 guidance of a diluted EPS range of $2.70 to $3.10. Defendant Duda was quoted in the release as stating: "'Our sales into electric vehicle applications continued to be impacted by events in China but are still poised to reach a record milestone of 20% of total sales in fiscal 2023. Overall, we remain on track to deliver our sales and earnings guidance for fiscal 2023.'"

32.     On that same day, Methode held an earnings conference call with analysts and investors to discuss Methode's first fiscal quarter 2023 results hosted by defendants Duda and Tsoumas. In his prepared remarks, defendant Duda stated that Methode was positioned to "deliver sales and earnings growth for fiscal 2023."

33.     Similarly, during the call, defendant Tsoumas stated that "based on the strong bookings we realized over the past 2 fiscal years, much of which is for the EV market, we announced a 3-year organic compounded annual growth rate of approximately 6%," and he assured investors that this CAGR "considers the anticipated roll-off of relevant programs and reinforces that our organic growth strategy is putting the company on a solid future growth trajectory."

34.     Also on September 1, 2022, Methode filed with the SEC a Form 10-Q for the first fiscal quarter of 2023, the period ending July 30, 2022, which was signed by the Individual Defendants. The Form 10-Q contained the financial information regarding Methode's first fiscal quarter 2023 financial results contained in the 1Q23 Release.

35.     On December 1, 2022, Methode issued a press release announcing the Company's financial results for its second fiscal quarter of 2023 (the "2Q23 Release"). The release stated that the Automotive Segment had $196.9 million in net sales and $23.4 million in income from

operations for the quarter.  The release updated the Company's fiscal 2023 guidance to a diluted EPS range of $2.70 to $2.90.  Defendant Duda was quoted in the release as stating: "'Methode delivered sequential earnings improvement over the first quarter and booked another strong quarter of EV program awards.'"

36.     On that same day, Methode held an earnings conference call with analysts and investors to discuss Methode's second fiscal quarter 2023 results hosted by defendants Duda and Tsoumas.  In his prepared remarks, defendant Duda stated that the Company "had another solid quarter for business awards" that would "represent $66 million in annual sales at full production" as "EV continues to be a solid growth engine for Methode."  Defendant Duda also reaffirmed the 3-year organic sales CAGR target of 6%, asserting that "[t]his target demonstrates that our business model is not just healthy, but as prospering from the strategic steps that we have taken to grow the business."

37.     In his opening remarks, defendant Tsoumas similarly stated that, "based on the strong bookings we have realized over the past 2 fiscal years, much of which is for the EV market, we previously announced a 3-year organic sales compounded annual growth rate target of 6%," which "considers the anticipated roll-off of all relevant programs and reinforces that our organic growth strategy is putting the company on a solid sales trajectory."

38.     Also on December 1, 2022, Methode filed with the SEC a Form 10-Q for the second fiscal quarter of 2023, the period ending October 29, 2022, which was signed by the Individual Defendants.  The Form 10-Q contained the financial information regarding Methode's second fiscal quarter 2023 financial results contained in the 2Q23 Release.

39.     The statements referenced in ¶¶22-38 above were materially false and misleading when made because they misrepresented and failed to disclose the adverse facts about Methode's

business, operations, and prospects, which were known to defendants or recklessly disregarded by them, as follows:

(a)     that the Company had lost highly skilled and experienced employees during the COVID-19 pandemic necessary to successfully complete the Company's transition from its historic low mix, high volume production model to a high mix, low production model at its Monterrey facility;

(b)     that the Company's attempts to replace its GM center console production with more diversified, specialized products for a wider array of vehicle manufacturers and OEMS, in particular in the EV space, had been plagued by production planning deficiencies, inventory shortages, vendor and supplier problems, and, ultimately, botched execution of the Company's strategic plans;

(c)     that the Company's manufacturing systems at its critical Monterrey facility suffered from a variety of logistical defects, such as improper system coding, shipping errors, erroneous delivery times, deficient quality control systems, and failures to timely and efficiently procure necessary raw materials;

(d)     that the Company had fallen substantially behind on the launch of new EV programs out of its Monterrey facility, preventing the Company from timely receiving revenue from new EV program awards; and

(e)     that, as a result of (a)-(d) above, the Company was not on track to achieve the 2023 diluted EPS guidance or the 3-year 6% organic sales CAGR represented to investors and such estimates lacked a reasonable factual basis.

40.     Then, on March 9, 2023, Methode issued a release announcing the Company's financial results for its third fiscal quarter of 2023 (the "3Q23 Release").  As stated in the release, the Company lowered its 2023 diluted EPS guidance to a range of $2.50 to $2.60 (down from

- 13 -

$2.70 to $2.90).  The 3Q23 Release further stated that the Automotive Segment achieved $176.5 million in net sales and $18.7 million in income from operations for the quarter.  A March 10, 2023 Jefferies analyst report blamed the miss in part on "likely EV pushouts," stating that "customer production ramp delays will likely weigh on timing of sales contribution."  The 3Q23 Release further stated that the Automotive Segment achieved $176.5 million in net sales and $18.7 million in income from operations for the quarter.

41.     On that same day, Methode held an earnings call with analysts and investors to discuss Methode's third fiscal quarter 2023 results hosted by defendants Duda and Tsoumas.  In his opening remarks, defendant Duda stated that the Company had "a very strong pipeline in front of us" and "again reaffirmed our 3-year organic sales compound annual growth rate of 6%, demonstrating that we are on track to organically grow the business."  Although he acknowledged near-term challenges, defendant Duda did not disclose the issues facing the Monterrey facility and claimed that the "path to [the 6% sales CAGR] target will not be linear," thereby indicating that the Company would make up for the miss in subsequent quarters.  Defendant Duda further stated that new EV program awards received by the Company will "not only replace the sunsetting center console business, but to grow the business at the [6% sales CAGR] that we have targeted."

42.     In particular, defendant Duda highlighted the revamping of the Company's manufacturing facilities, which included the Monterrey facility.  He stated that "[t]o support these new and diverse set of customer programs, many of which are for EV applications, we will be making investments and launching over 20 new programs in fiscal 2024."  Defendant Duda added that "[t]hese investments include significant tooling and increased staffing" at the Company's plants.

43.     In his prepared remarks, defendant Tsoumas similarly stated that the 3-year organic sales CAGR target of 6% "will mainly occur in fiscal year 2025."  Further, defendant Tsoumas

asserted that Methode's "strong pipeline of awards . . . will enable us not to only replace the center console programs, but grow the business at the 6% rate we have targeted" and "support our organic growth target for fiscal year '25." Later, in response to an analyst question about the Company's EV backlog, defendant Tsoumas stated: "[W]e're investing for this organic growth in all 3 major locations . . . to support the OEMs in different locations. So in a lot of ways, that's a really good thing for us to have that [capability]." Defendant Duda added: "And [that's] one of the factors on why we're booking business."

44.     In response to the disappointing results on EV production delays, the price of Methode common stock dropped from $47.61 per share when the market closed on March 8, 2023 to $41.36 per share when the market closed on March 13, 2023 (the next trading day after March 10, 2023), a 13% decline, on abnormally heavy volume. Defendants, however, continued to conceal the full truth about the problems the Company was then experiencing at the Monterrey facility, among other issues. As a result, the price of Methode common stock remained artificially inflated.

45.     On June 12, 2023, Methode issued a press release announcing preliminary 2023 financial results. The release stated that the Company expected to report below-range annual diluted EPS of just $2.10 to $2.14 (compared to guidance of $2.50 to $2.60, which had already been lowered from initial projections). The release also provided preliminary fiscal 2024 net sales guidance of $1.15 billion to $1.2 billion and diluted EPS of $1.55 to $1.75, signaling continued deterioration "due to additional costs to support new program launches and the impact from program roll-offs," among other factors. The release further provided preliminary 2025 net sales guidance of $1.25 billion to $1.35 billion, which was below the Company's recently reaffirmed 6% 3-year sales CAGR.

46.     Similarly, on June 22, 2023, Methode issued a press release announcing the Company's financial results for its fourth fiscal quarter and full year 2023 ("4Q/FY23 Release"). The release stated that the Company had actually achieved only $1.18 billion in net sales – below the preliminary results provided just ten days before – and diluted EPS of only $2.10, the bottom of the preliminary range.  Again, the release blamed the poor results and dismal guidance in substantial part on adverse impacts from program roll-offs and new program launches.

47.     The 4Q/FY23 Release stated that the Automotive Segment achieved $186.2 million in net sales and $10.2 million in income from operations for the quarter.  For fiscal 2023, the release stated that the Company achieved $1.179 billion in consolidated net sales and $77.1 million in net income.  The release also provided fiscal 2024 net sales guidance of $1.15 billion to $1.2 billion and diluted EPS of $1.55 to $1.75, and fiscal 2025 net sales guidance of $1.25 billion to $1.35 billion, with 2025 income from operations in a range of 11% to 12% of net sales.  Defendant Duda was quoted in the release as stating: "'The main highlight of the quarter was new awards of over $250 million, with over 80% being in EV applications.  We have now won $600 million in EV awards over the past three years.'"  He continued in pertinent part:

> "As our business continues to transition away from user interface towards more lighting and power solutions, ***our fiscal 2024 will see significant investment to support over 20 new program launches***.  This transition investment combined with the impact of legacy program rolls offs will cause us to see lower earnings in fiscal 2024.  ***However, the strong award pipeline along with an expected rebound in the commercial vehicle, data center and e-bike markets will position us to deliver significant organic sales and earnings growth in fiscal 2025 over fiscal 2024***."

48.     On the same day, Methode held an earnings call with analysts and investors to discuss Methode's fourth fiscal quarter and full year 2023 results hosted by defendants Duda and Tsoumas.  In his opening remarks, defendant Duda stated Methode had a "very strong quarter with over $250 million in annual program awards," dominated by EV programs in the United States.  He added that "[t]he strength of our bookings gives me confidence that . . . we will achieve the

margin expansion that supports our guidance for fiscal 2025." He also stated that while "the net of program roll-offs and program launches" is a sales headwind in fiscal 2024, it will be a sales tailwind by fiscal 2025, with the net result being "an 11% organic sales growth rate from fiscal 2024 to fiscal 2025." Defendant Duda continued:

> With the strong award pipeline for the past 3 years and the effort Methode has made to transition its product portfolio . . . , this fiscal 2025 guidance demonstrates that our business model is healthy and is positioned to prosper from the strategic steps that we've taken to grow the business.

He added that Methode was "making significant investments and launching over 20 new programs," which, "along with multiple years of strong awards, will enable us not only to replace the sunsetting programs, but to organically grow the business 11% from fiscal 2024 to [f]iscal 2025."

49.     Later during the call, defendants were asked to describe the costs of the new product launches and efforts underway to retool the Company's factories. Defendant Duda responded that the costs had already been factored into guidance and indicated upgrades were proceeding according to plan, stating in pertinent part:

> It is equipment, it is people, it is prototyping costs that we're starting to incur and we'll continue to incur throughout fiscal 2024. As we get into the end of '24, those costs will start to be absorbed into the product launches. ***So factored into the guidance, and we will – we are starting – we've been hiring. We've been procuring equipment. The plant is probably 30% complete from an equipment standpoint***. So that will continue throughout the year, and then we will be launching a lower volume at the end of the year. That's not a significant amount, but it will start to absorb the costs.

50.     In response to the disappointing quarterly results on program delays and the greater than previously disclosed adverse effects of program roll-offs, the price of Methode common stock dropped from $45.07 per share when the market closed on June 12, 2023 to $32.77 per share when the market closed on June 23, 2023, a 27% decline, on abnormally heavy volume. Defendants, however, continued to conceal the full truth about the problems the Company was then

experiencing at the Monterrey facility, among other issues. As a result, the price of Methode common stock remained artificially inflated.

51.     On August 31, 2023, Methode announced that defendant Duda would be retiring from his positions as a director, President, and CEO.

52.     Then, on September 7, 2023, Methode issued a press release announcing the Company's financial results for its first fiscal quarter of 2024 (the "1Q24 Release"). The release stated that "operational inefficiencies" in the Company's North American operations and accelerated expenses related to new program launches had negatively impacted earnings for the quarter and were expected to linger into the second quarter. The operational issues included both labor and vendor problems and had led to planning deficiencies, inventory shortages, unrecoverable spot purchases, premium freight, and delayed shipments. The release also lowered expected 2024 net sales to a range of $1.14 billion to $1.18 billion (down from $1.15 billion to $1.2 billion) and slashed expected diluted EPS to a range of $0.80 to $1 (down from $1.55 to $1.75).

53.     On the same day, Methode held an earnings call with analysts and investors to discuss Methode's first fiscal quarter 2024 results hosted by defendants Duda and Tsoumas. Defendant Duda gave the following explanation of the issues:

> Our Monterrey operation has historically manufactured with a low mix and a high volume of product. Recently, the operation has transitioned into a mode of higher mix and lower volume. This transition, combined with the aforementioned issues, led to exposure of latent operating inefficiencies that our early warning detected but we failed to mitigate, also very un-Methode.
>
> In the lean manufacturing environment, a delay in visibility of a problem can ultimately generate significant costs in the form of premium freight and spot buying, both necessary to immediately address material shortages and maintain customer delivery integrity. In auto, delivery in addition to quality is absolutely paramount to both maintaining and obtaining new business. These operational challenges had an approximately $0.15 impact on our first quarter earnings relative to our expectations. We also had accelerated expenses related to the numerous program launches. . . .

- 18 -

However, the residual effects are expected to impact our second quarter to approximately the same degree, and along with a significant weakening in the e-bike market are the primary drivers to our lowering earnings guidance for the full year.

54.     The 1Q24 Release stated that the Automotive Segment generated $158.3 million in net sales and a $2.8 million loss from operations for the quarter.  The release also provided fiscal 2024 net sales guidance of $1.14 billion to $1.18 billion and diluted EPS of $0.80 to $1 and fiscal 2025 net sales guidance of $1.25 billion to $1.35 billion, with 2025 income from operations in a range of 11% to 12% of net sales.  Defendant Duda was quoted in the release as stating that the operational challenges suffered at the Monterrey facility "'have been identified and corrective action plans are already in place.'"  He continued in pertinent part:

"[W]e remain on track with the 20-plus new program launches that we previously announced.  In addition, the award pipeline along with an expected rebound in the commercial vehicle, data center and e-bike markets continue to position us for significant organic sales and earnings growth in fiscal 2025 over fiscal 2024, and our guidance for fiscal 2025 remains unchanged."

55.     In his opening remarks on the September 7, 2023 earnings call, defendant Duda stated that the operational challenges in the Monterrey facility "have been identified and corrective action plans are already in place."  He also assured investors that he would be "personally involved with the efforts to correct the situation . . . we will fix this."  Defendant Duda further stated that the Company "will be making significant investments in launching over 20 new programs," which "include significant tooling and increased staffing to ensure a successful 2025" and "is expected to enable us to not only replace the sunsetting programs but to organically grow the business 12% from fiscal 2024 to fiscal 2025."  Defendant Duda stated that "our view on fiscal 2025 has not changed."  He concluded his opening remarks: "I am extremely confident that the company will continue to flourish given the exceptional team in place and the solid strategy that is positioned for growth."

- 19 -

56.     During the question-and-answer session, defendant Duda stated that he was "very confident that they're going to see an uptick in their business" and claimed that the Monterrey plant "will have more volume through it than it had even in the center console days."  Defendant Duda also stated that the transition away from reliance on GM had made the Company "more secure" and represented that the Company's sales had "not at all" been impacted by the operational issues.

57.     As a result of this news, the price of Methode common stock dropped from $30 per share when the market closed on September 6, 2023 to $23.33 per share when the market closed on September 7, 2023, a 22% decline, on abnormally heavy volume.  Defendants, however, continued to conceal the full truth about the problems the Company was then experiencing at the Monterrey facility, among other issues.  As a result, the price of Methode common stock remained artificially inflated.

58.     Then, on December 7, 2023, Methode issued a release announcing the Company's financial results for its second fiscal quarter of 2024 (the "2Q24 Release").  The release revealed that the Automotive Segment had generated only $154.3 million in net sales and suffered a $61.5 million loss from operations during the quarter.  The release also lowered the Company's 2024 diluted EPS guidance to a range of negative $1.40 to negative $1.14 (down from $0.80 to $1).  The release similarly lowered Methode's 2025 revenue guidance to $1.15 billion to $1.25 billion (down from $1.25 billion to $1.35 billion) and its expected 2025 income from operations to a range of 6% to 8% as a percentage of net sales (down from the prior range of 11% to 12%).  The release further revealed that the operational challenges at the Company's Monterrey facility were far greater than previously reported and expected to impact the second half of the fiscal year, as the Company's vaunted EV awards suffered launch setbacks and significant cost overruns.  The

release also disclosed a $56.5 million goodwill impairment in the Company's North American and European Automotive Reporting Units.

59.     On the same day, Methode held an earnings call with analysts and investors to discuss Methode's second fiscal quarter 2024 results hosted by defendants Duda and Tsoumas. Defendant Duda admitted that the operational deficiencies "probably existed prior to this fiscal year" and indeed extended back to the "end of COVID" when "a certain amount of knowledge" had departed the Company with personnel turnover.  He described the issues in pertinent part:

> I was overly optimistic.  There, it is taking us longer to go through the various routings and part numbers and make corrective actions.  To give you more color around that, these issues probably existed prior to this fiscal year, but they were masked by very high inventory in certain areas.
>
> And we took, as normally we do, when we try to lean out our operations, we brought inventory down.  And that – one of the analogy is that the lean experts sometimes uses the pond and he lowers the pond, you find the rocks.  Well, we found boulders.  And it took us much longer, it is taking much longer to correct.
>
> They're all, as I said, all fixable, but it's a mismatch between our various systems.  We do manufacture product in Dongguan, China that ship to Monterrey. The engineering changes weren't recorded properly and we said, a lot of it was due to salary personal [sic] turnover, that there was a certain amount of knowledge that probably got lost at end of COVID.
>
> So it's really dealing with routings, MRP, lead time.  And we have some lead times in the system at two weeks when it probably should have been closer to two months.  Also, there – we saw changing.  And then I don't know if this is a COVID leftover, but we're seeing some tremendous changes in schedule, something that we have not seen much in the past and that also puts a stress on the system.
>
> *     *     *
>
> And I was probably always a lag on some of the invoicing, you don't get invoiced next week for premium shipments and there's probably some of that occurred in the first quarter that carried over in the second quarter.  Again, all fixable.  It's as we underestimated the amount of time.

60.     During his prepared remarks on the December 7, 2023 earnings call, defendant Duda stated: "[W]e're decisively making the investments in fiscal '24 to ensure profitable growth

in fiscal '25" and "firmly believe that our business model is healthy and is positioned to prosper from the strategic direction that we have taken in the lighting and power solutions to grow the business."

61.     As a result of this news, the price of Methode common stock dropped from $24.39 per share when the market closed on December 6, 2023 to $21.52 per share when the market closed on December 8, 2023, a nearly 12% decline, on abnormally heavy volume. Defendants, however, continued to conceal the full truth about the problems the Company was then experiencing at the Monterrey facility, among other issues. As a result, the price of Methode common stock remained artificially inflated.

62.     On March 7, 2024, Methode issued a release announcing the Company's financial results for its third fiscal quarter of 2024. The Automotive Segment generated only $139.7 million in net sales for the quarter and suffered an $11 million loss from operations. The release withdrew all of Methode's prior guidance due in substantial part to the "operational challenges" at the Monterrey facility and stated that defendants' prior statements regarding the guidance should no longer be relied upon. The release further announced urgent actions being taken by the Company to reduce costs, such as by reducing headcount and discretionary expenses and by disposing of non-critical assets.

63.     On the same day, Methode held an earnings call with analysts and investors hosted by new CEO Avinash Avula ("Avula"), who had replaced defendant Duda, and defendant Tsoumas. In his opening remarks, Avula stated that sales for the quarter were down $21 million year-over-year "entirely [attributable to] our Auto segment." Avula further stated that the "lower sales, along with the continued operational inefficiencies in North American auto operations drove the net loss in the quarter." Defendant Tsoumas similarly noted a litany of issues still negatively impacting the Company's Monterrey facility, including "high labor turnover, planning issues,

leading to inventory shortages, leading to expedited incoming freight, and sometimes outgoing freight, some short shipping premium freight, inbound and spot purchases where our planning isn't fully vetted."

64.     As a result of this news, the price of Methode common stock dropped from $21.04 per share when the market closed on March 6, 2024 to $14.49 per share when the market closed on March 7, 2024, a 31% decline, on abnormally high volume.

65.     On April 8, 2024, Methode announced that defendant Tsoumas would be retiring from the Company effective July 12, 2024.  Less than one month later, on May 6, 2024, Methode announced that Avula had resigned just three months into his role as CEO.

66.     By mid-June 2024, the price of Methode stock had fallen to less than $10 per share, more than 80% below its Class Period high.

67.     In mid-July 2024, Methode announced its financial results for the fourth fiscal quarter and full year ended April 27, 2024.  During the quarter, the Company suffered a $57.3 million net loss and took a $49.4 million goodwill impairment in its North American Automotive reporting unit.  The Company cited ongoing operational inefficiencies in its Automotive Segment, which were being driven by continued labor turnover and higher costs, among other issues.

68.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of Methode common stock, plaintiff and other Class members have suffered significant losses and damages under the federal securities laws.

**CLASS ACTION ALLEGATIONS**

69.     Plaintiff brings this action as a class action on behalf of a class consisting of all persons who purchased Methode common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants,

at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

70.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Methode common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Methode or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

71.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

72.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

73.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether defendants' statements during the Class Period were materially false and misleading;

        (b)     whether defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

        (c)     the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

- 24 -

74. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

75. As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated during the Class Period to the investing public in the name of the Company, or in their own name, were materially false and misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Methode, and their control over and/or receipt and/or modification of Methode's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

76. Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

77. The Individual Defendants, because of their positions with Methode, controlled the contents of Methode's public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or

cause it to be corrected. Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the defendants is responsible for the accuracy of Methode's corporate statements and is, therefore, responsible and liable for the representations contained therein.

78.     Furthermore, the transition away from the Company's historic reliance on GM and towards new EV program awards was one of the Company's most important strategic initiatives on which the Individual Defendants were intensely focused. The Individual Defendants held themselves out as persons most knowledgeable about this transition during the Class Period and repeatedly highlighted new EV program awards and a desire to diversify away from GM on conference calls with analysts and investors. In the years prior to the Class Period, GM represented as much as 50% of the Company's consolidated net sales, which consisted primarily of sales to GM of integrated center consoles for use in trucks and SUVs. The loss of this business and its purported replacement with "higher margin" EV awards was one of the most critical issues facing the Company, a fact reflected in the 80% decline in the price of Methode stock once the problems detailed herein around the troubled transition were publicly revealed.

79.     In particular, the Individual Defendants stressed the critical importance of the very issues they failed to disclose, as detailed herein, to Methode's business, financials, and prospects, as well as their close personal attention to such issues. For example, according to defendant Duda: "In auto, delivery in addition to quality is absolutely paramount to both maintaining and obtaining new business." Similarly, during a September 7, 2023 earnings call, defendant Duda stated that he "ha[d] been and will continue to be personally involved with the efforts to correct the situation."

He later assured investors: "My immediate focus as well as the entire management team's focus is on correcting those inefficiencies."

80.     Defendants have also admitted that the issues were pre-existing during the Class Period even though they were not disclosed to investors. For example, defendant Duda has stated that the problems at the Monterrey facility involved "latent operating inefficiencies that our early warning detected but we failed to mitigate." Defendant Duda likewise has admitted that the issues impacting the Monterrey plant "probably existed prior to this fiscal year [2024]."

81.     Defendants' scienter is bolstered by the numerous executive departures during and soon after the Class Period. On July 14, 2023, Methode issued a release that announced that Joseph Khoury, the Company's Chief Operating Officer, had been "placed on leave from his position" and "his powers, authority and duties as such officer of the Company were suspended." No mention of the reasons for the abrupt suspension were given, and Khoury (who oversaw the Monterrey facility as a crucial part of the Company's overall operations) was fired by the Board in December 2023. In August 2023, Methode announced the retirement of defendant Duda from his positions as President and CEO. His successor, Avula, started at the end of January 2024, but, shockingly, left the Company less than three months later. The Company announced the retirement of defendant Tsoumas, Methode's CFO, in April 2024. The exit of several high-profile executives connected to the problems unfolding at the Company's Monterrey facility further bolsters an already compelling inference of scienter.

82.     The scienter of defendants is further underscored by the certifications mandated under the Sarbanes-Oxley Act of 2002 of defendants Duda and Tsoumas filed during the Class Period, which acknowledged their responsibility to investors for establishing and maintaining controls to ensure that material information about Methode was made known to them and that the Company's disclosure-related controls were operating effectively.

**LOSS CAUSATION**

83.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Methode common stock and operated as a fraud or deceit on Class Period purchasers of Methode common stock by failing to disclose and misrepresenting the adverse facts detailed herein.  When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Methode common stock declined significantly as the prior artificial inflation came out of the price of the stock.

84.     As a result of their purchases of Methode common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.  Defendants' false and misleading statements had the intended effect and caused Methode common stock to trade at artificially inflated levels throughout the Class Period, trading as high as $51.38 per share on February 3, 2023.

85.     By concealing from investors the adverse facts detailed herein, defendants presented a misleading picture of Methode's business, risks, and future financial prospects.  When the truth about the Company was revealed to the market, the price of Methode common stock fell significantly, dropping to less than $10 per share by mid-June 2024, removing the inflation therefrom and causing economic loss to investors who had purchased Methode common stock during the Class Period.

86.     The decline in the price of Methode common stock after the corrective disclosures came to light was a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Methode common stock negates any inference that the losses suffered by plaintiff

and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.

87. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Methode common stock and the subsequent significant declines in the value of Methode common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

88. At all relevant times, the market for Methode common stock was an efficient market for the following reasons, among others:

(a) Methode common stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient, national stock market;

(b) as a regulated issuer, Methode filed periodic public reports with the SEC;

(c) Methode regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Methode was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

89. As a result of the foregoing, the market for Methode common stock promptly digested current information regarding Methode from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Methode

common stock during the Class Period suffered similar injury through their purchases of Methode common stock at artificially inflated prices and a presumption of reliance applies.

90.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on defendants' material misstatements and/or omissions.    Because this action involves defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

91.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint.  Many of the specific statements pled herein were not identified as "forward-looking statements" when made.   To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Methode who knew that those statements were false when made.

**COUNT I**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5 Promulgated Thereunder
Against All Defendants**

92.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

94.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Methode common stock during the Class Period.

95.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Methode common stock.  Plaintiff and the Class would not have purchased Methode common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

96.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Methode common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

97.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     The Individual Defendants acted as controlling persons of Methode within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of Methode stock, the Individual Defendants had the power and authority to cause Methode to engage in the wrongful conduct complained of herein.  Methode controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Designating plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  August 26, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)


s/ Brian E. Cochran
BRIAN E. COCHRAN

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD, LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

Marie Salem ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>22</u>___ day of August, 2024.

Signed by:

Marie Salem
97BCD3556D04402...

_____
Marie Salem

METHODE

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Stock**

| Date<br>Acquired | Amount of<br>Shares Acquired | Price |
|---|---|---|
| 02/23/2023 | 100 | $48.99 |

Prices listed are rounded up to two decimal places.