**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> METHODE ELECTRONICS, INC., DONALD W. DUDA, and RONALD L.G. TSOUMAS, <br><br> Defendants. | Case No. 1:24-cv-07696 <br><br> District Judge Sara L. Ellis <br><br> Magistrate Judge M. David Weisman |
| CITY OF CAPE CORAL MUNICIPAL GENERAL EMPLOYEES' RETIREMENT PLAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> METHODE ELECTRONICS, INC., DONALD W. DUDA, RONALD L.G. TSOUMAS, and JOSEPH KHOURY, <br><br> Defendants. | Case No. 1:24-cv-09654 <br><br> District Judge Robert W. Gettleman <br><br> Magistrate Judge Beth W. Jantz |

**MEMORANDUM OF LAW IN SUPPORT OF THE PENSION FUNDS' MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

City of Cape Coral Municipal General Employees' Retirement Plan ("Cape Coral"), Michigan Electrical Employees' Pension Fund ("Michigan Electrical"), and Allegheny County Employees' Retirement System ("Allegheny") (together, the "Pension Funds") respectfully submit this Memorandum of Law in support of their motion for: (1) consolidation of the above-captioned actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointment of the Pension Funds as Lead Plaintiff pursuant to 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (3) approval of the Pension Funds' selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the class; and (4) such other and further relief as the Court may deem just and proper.

## I.      INTRODUCTION

On October 7, 2024, Cape Coral, through its counsel Kessler Topaz and Bernstein Litowitz, filed a securities class action alleging that between December 2, 2021, and March 6, 2024, inclusive (the "Class Period"), Methode Electronics, Inc. ("Methode" or the "Company") and certain of its former executive officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5.[1] The Related Actions allege that, throughout the Class Period, Methode and its senior executives

---

[1] The complaints in the Related Actions assert slightly different class periods. The complaint in *Salem v. Methode Electronics, Inc., et al.,* 1:24-cv-07696 (N.D. Ill.) ("*Salem*") asserts a class period of June 23, 2022, through March 6, 2024, while the complaint in *City of Cape Coral Municipal General Employees' Retirement Plan v. Methode Electronics, Inc., et al.,* 1:24-cv-09654 (N.D. Ill.) ("*Cape Coral*") asserts a class period of December 2, 2021, through March 6, 2024. For purposes of appointing a Lead Plaintiff, courts generally apply the longest, most inclusive class period. *See, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *3 (N.D. Ill. Nov. 15, 2019) (using the broadest class period to assess movants' financial interests).

misled investors regarding the Company's ability to replace revenue from a major automotive center console contract that was ending with revenue from new contracts from electric vehicle ("EV") manufacturers, and its ability to deliver on those EV contracts. Methode investors, like the Pension Funds, incurred significant losses when it was revealed that the Company was unable to deliver on its EV pipeline. As detailed below, the Related Actions involve common issues of law and fact and should be consolidated pursuant to Rule 42(a). *See infra* Section III.A.

After addressing consolidation, the PSLRA directs courts to appoint as lead plaintiff the "person or group of persons" with the "largest financial interest in the relief sought by the class" that also meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") at this stage in the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Pension Funds—three institutional investors overseeing more than $1.8 billion in total assets—respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. The Pension Funds' motion is timely, and their losses of approximately $492,572.93 on a last-in, first-out ("LIFO") basis in connection with their transactions in Methode common stock during the Class Period represent the largest known financial interest in the relief sought by the class.[2]

Additionally, the Pension Funds easily satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). The Pension Funds' claims are typical of all members of the class and the Pension Funds will fairly and adequately represent the class in this putative class action. Moreover, as sophisticated institutional investors, the Pension Funds are

---

[2] The Pension Funds' PSLRA-required Certifications are attached as Exhibit A to the Declaration of Avi Josefson in Support of the Pension Funds' Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Josefson Decl."). Charts setting forth calculations of the Pension Funds' losses are attached as Exhibit B to the Josefson Decl.

exactly the type of Lead Plaintiff that Congress sought to have managing securities class action lawsuits under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").[3] Furthermore, as set forth in the Joint Declaration of Brian Fenske, David Fashbaugh, and Walter Szymanski in Support of the Pension Funds' Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (the "Joint Declaration"), the Pension Funds are already functioning as a cohesive group, fully understand the Lead Plaintiff's obligations and fiduciary duties to the class under the PSLRA, and are willing and able to undertake those responsibilities to vigorously prosecute this litigation. *See* Josefson Decl., Ex. C.

Lastly, the Pension Funds have retained experienced and competent counsel to represent the class. Kessler Topaz and Bernstein Litowitz have an extensive history of jointly prosecuting complex actions under the PSLRA and obtaining significant recoveries for investors, including in cases in this District and before this Court. *See, e.g.*, *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-1339 (N.D. Ill.) (Alonso, J.) ($450 million recovery for investors); *In re Baxter Int'l Inc. Sec. Litig.*, No. 1:19-cv-7786 (N.D. Ill.) (Ellis, J.) ($16 million recovery for investors). Further, the firms have already demonstrated their zealous representation of the putative class in this case by jointly conducting an investigation of Defendants' conduct and filing the *Cape Coral* action, expanding the class period, and maximizing the class's potential recovery in this action. Accordingly, the Pension Funds respectfully request that the Court approve their selection of Kessler Topaz and Bernstein Litowitz to serve as Lead Counsel for the class.

---

[3] Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

3

## II.     FACTUAL BACKGROUND

Methode designs, manufactures, and produces custom engineered solutions and other products for user interfaces, light-emitting diode ("LED") lighting systems, and power distribution and sensor applications.  Methode reports its financials through four business segments: Automotive; Industrial; Interface; and Medical.  As of the Company's 2024 fiscal year-end, the Automotive segment was responsible for approximately 54% of the Company's net sales.

In 2010, Methode's Automotive segment was awarded the center console program for General Motors Company ("GM"), which, after beginning in fiscal year 2013, was projected to add approximately $100 million to Methode's revenue each year thereafter.  In fiscal year 2016, at the peak of the program's production, Methode's sales to GM accounted for nearly 50% of the Company's consolidated net sales for the year.  By 2020, Methode began moving away from manufacturing traditional center console stack units to follow automotive trends that increasingly focused on integrating control functions into the vehicle's touchscreen display and relied less on traditional buttons and knobs.  Accordingly, the Company began increasing its focus on producing such typically higher-margin products, especially related to EVs.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, the Related Actions allege that Defendants misrepresented and/or failed to disclose, among other things, that: (1) Methode's Automotive segment was not growing in the EV space to sufficiently replace the revenue that Methode was losing from the end of its GM center console program; (2) the Company's Automotive segment, particularly as it relates to Methode's operations in North America, was experiencing significant, ongoing operational inefficiencies that impaired the Company's ability to generate sustainable revenue growth and profitability; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects

4

were materially false and misleading and/or lacked a reasonable basis.

Investors learned the truth about the significant problems in Methode's Automotive segment through a series of disclosures beginning on March 9, 2023, when the Company announced its third quarter fiscal year 2023 financial results, the Company reported that its overall quarterly net sales decreased nearly 4% year-over-year, which was largely driven by a nearly 10% decline in quarterly Automotive net sales. The Company also cut its fiscal year 2023 net sales and diluted earnings per share guidance. On this news, the price of Methode common stock declined $6.25 per share, or more than 13% over multiple trading sessions, from a close of $47.61 per share on March 8, 2023, to close at $41.36 per share on March 13, 2023.

Ultimately, the full extent of Methode's operational challenges was revealed on March 7, 2024, when Methode reported its third quarter fiscal year 2024 financial results. On the Company's investor earnings call held that day, the Company's President and Chief Executive Officer revealed a "$21 million year-over-year" decrease in quarterly net sales due to continued operational inefficiencies within the Automotive segment. The Company also suspended its financial guidance for fiscal years 2024 and 2025 (including the Company's three-year organic sales compounded annual growth rate) and stated that "[a]ny and all previous guidance provided by the company should no longer be relied upon." On this news, the price of Methode common stock declined $6.55 per share, or more than 31%, from a close of $21.04 per share on March 6, 2024, to close at $14.49 per share on March 7, 2024.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered."

15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *3 (N.D. Ill. Oct. 8, 2019) (same).

Currently, there are two related securities class actions pending in this District asserting claims under the federal securities laws on behalf of investors against Defendants:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Salem v. Methode Electronics, Inc., et al.*, No. 1:24-cv-07696 (N.D. Ill.) | August 26, 2024 | Sections 10(b) and 20(a) of the Exchange Act; June 23, 2022, through March 6, 2024 |
| *City of Cape Coral Municipal General Employees' Retirement Plan v. Methode Electronics, Inc., et al.*, No. 1:24-cv-09654 (N.D. Ill.) | October 7, 2024 | Sections 10(b) and 20(a) of the Exchange Act; December 2, 2021, through March 6, 2024 |

Under Rule 42(a), consolidation of actions before the court is appropriate where the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Here, the Related Actions assert similar claims under the Exchange Act against largely the same defendants relating to substantially the same conduct during overlapping class periods. Though the *Cape Coral* action asserts a slightly longer class period than the *Salem* action and adds one individual defendant, these minor differences do not render consolidation inappropriate. *See Kraft*, 2019 WL 4958238, at *3 (consolidating actions asserting different class periods). Accordingly, the Related Actions involve common questions of law or fact and, therefore, should be consolidated. *See id.* ("In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced.").

**B.      The Pension Funds Satisfy the PSLRA's Requirements and Should Be Appointed as Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i); *Kraft*,

6

2019 WL 4958238, at *2 ("[The PSLRA] provides guidelines for the appointment of a lead plaintiff in a securities class action case."). First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Within sixty days of the publication of the notice, any member or group of members of the purported class may apply to the court to be appointed as lead plaintiff, whether or not they have filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member or group of class members and shall appoint as lead plaintiff the class member or group of class members that the court determines to be the "most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(i); *see also Kraft*, 2019 WL 4958238, at *2 (explaining that the PSLRA's guidelines for appointment of a lead plaintiff applies to a "person or group of persons"). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is the movant or group of movants that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As demonstrated below, the Pension Funds meet each of these requirements and therefore should be appointed as Lead Plaintiff.

### 1. The Pension Funds Have Timely Moved for Appointment

The PSLRA allows any class member or group of class members to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On August 26, 2024, in connection with the filing of the

*Salem* action, notice was published in *GlobeNewswire* alerting investors to the pendency of the action and informing them of the October 25, 2024 deadline to seek appointment as Lead Plaintiff. *See* Josefson Decl., Ex. D.[4] Accordingly, the Pension Funds' motion is timely.

### 2. The Pension Funds Assert the Largest Financial Interest

The PSLRA adopts a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kraft*, 2019 WL 4958238, at *2. Here, the Pension Funds suffered losses of approximately $492,573 when calculated on a LIFO basis in connection with their Class Period transactions in Methode common stock. *See* Josefson Decl., Exs. A & B. To the best of the Pension Funds' knowledge, no other movant seeking Lead Plaintiff appointment has a larger financial interest in this litigation. Therefore, the Pension Funds satisfy the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Funds Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also satisfy the applicable requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff stage, movants need to make only a preliminary showing of typicality and adequacy under Rule 23. *See Kraft*, 2019 WL 4958238, at *8 (requiring a "preliminary showing" of adequacy and typicality); *Bang v. Acura Pharms., Inc.*, 2011 WL 91099,

---

[4] The filing of the *Cape Coral* action did not disturb the previously noticed deadline to seek appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("[i]f more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published"). Accordingly, the same day Cape Coral filed its complaint, Kessler Topaz published notice in *Business Wire* alerting investors to the pendency of the *Cape Coral* action and the expanded Class Period, and reiterating the October 25, 2024 deadline to seek appointment as Lead Plaintiff. *See* Josefson Decl., Ex. E.

at *3 (N.D. Ill. Jan. 11, 2011) (stating that the court's inquiry "need not be extensive") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001)). The Pension Funds satisfy the typicality and adequacy requirements.

### a. The Pension Funds' Claims Are Typical

At the lead plaintiff stage, a lead plaintiff's claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Kraft*, 2019 WL 4958238, at *9 (brackets in the original). Here, the Pension Funds satisfy the typicality requirement because, just like all other proposed class members, the Pension Funds seek recovery for the losses on their investments in Methode common stock that they incurred as a result of Defendants' misrepresentations and omissions. *See id.* (finding that a potential lead plaintiff group's claims were typical where their "claims [we]re based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of the other class members in th[e] case"). The Pension Funds' claims arise from the same conduct as those of the other proposed class members and, thus, the Pension Funds satisfy Rule 23's typicality requirement.

### b. The Pension Funds Are Adequate

The adequacy requirement of Rule 23 requires that the lead plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Kraft*, 2019 WL 4958238, at *9 (brackets in the original).

The Pension Funds satisfy the adequacy requirement because their interest in vigorously pursuing claims against Defendants—given their substantial financial losses—is aligned with the

interests of the class who were similarly harmed as a result of Defendants' false and/or misleading statements. There are no potential conflicts between the Pension Funds' interest and the interests of the class, and the Pension Funds are fully committed to vigorously pursuing claims on behalf of the class. Indeed, Cape Coral, one of the Pension Funds, has already demonstrated its zealous representation of the putative class in this case by filing the *Cape Coral* action against Defendants, expanding investors' claims.

Moreover, the Joint Declaration provides specific evidence of the Pension Funds' ability to function as a cohesive group to zealously represent the interests of the class. *See id.* at *10 (appointing group of investors that submitted joint declaration demonstrating their "ability to fairly and adequately protect the interests of the class"); *Acura Pharms*., 2011 WL 91099, at *5 (appointing group of investors who submitted affidavits attesting to "their willingness to serve as a representative party on behalf of a class"). Here, the Joint Declaration establishes that Cape Coral, Michigan Electrical, and Allegheny fully understand the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA—including acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents—and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation. *See* Josefson Decl., Ex. C, ¶¶ 2-6. Specifically, the Pension Funds have already taken measures to ensure that the class's claims are vigorously and effectively prosecuted in the best interests of the class. Among other things, before seeking appointment, representatives of the Pension Funds held a conference call during which they discussed the strategy for jointly prosecuting the action, their shared desire to achieve the best possible result for the class, their shared interest in serving jointly as Lead Plaintiff in this case,

and the benefits the class would receive from their joint leadership of the case. *See id.*, ¶¶ 9-11. To ensure the effective prosecution of this litigation, representatives from Cape Coral, Michigan Electrical, and Allegheny discussed with each other the importance of joint decision making, open communication, and the ability to confer, with or without counsel, on short notice in order to make timely decisions. Further, while the Pension Funds appreciate that attorneys' fees in this litigation, if any, will be set by the Court, the Pension Funds take very seriously their obligation as Lead Plaintiff and have executed retainer agreements that limit the fees counsel may request. *See id.*, ¶ 15. Moreover, the Pension Funds also directed their proposed Lead Counsel, Kessler Topaz and Bernstein Litowitz, to enter into a Joint Prosecution Agreement ("JPA") governing counsels' activities in this litigation, their reporting to and oversight by the Pension Funds, and the allocation of responsibilities to ensure the zealous and cost-effective prosecution of this action. *See id.*, ¶ 12. The Pension Funds authorized counsel to provide the JPA to the Court for *in camera* review upon request. *See id*. Through these and other measures, the Pension Funds have sought to ensure that the class will receive the best possible representation.

The Pension Funds have further demonstrated their adequacy by selecting Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class. As discussed more fully below, Kessler Topaz and Bernstein Litowitz are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to work together to prosecute complex securities class action litigation in an efficient, effective, and professional manner, including investigating and filing one of the above-captioned Related Actions.

In addition to satisfying the requirements of Rule 23, the Pension Funds are sophisticated institutional investors overseeing more than $1.8 billion in total assets and are the prototypical investors Congress sought to encourage to lead securities class actions. *See id.*, ¶¶ 2-4; H.R. Conf.

Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because such investors are more apt to effectively manage complex securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34-35, 1995 U.S.C.C.A.N. at 733-34; *Kraft*, 2019 WL 4958238, at *3 ("The largest financial interest provision [of the PSLRA] seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff."). To this end, many courts have recognized a strong preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g.*, *Kraft*, 2019 WL 4958238, at *10 (appointing group of institutions as lead plaintiff that submitted declaration detailing "their ability to monitor counsel and their incentive to maximize recovery for the class"); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that submitted joint declaration stating that they "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation").

In sum, the Pension Funds have demonstrated their willingness, resources, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the class. The Pension Funds are precisely the type of investor that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.

### C. The Court Should Approve the Pension Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he Court should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class." *Kraft*, 2019 WL 4958238, at *11 (brackets in original). Here, the Pension Funds have selected Kessler Topaz and Bernstein Litowitz to serve as Lead Counsel for the class.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in the field. *See* Josefson Decl., Ex. F. The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Kessler Topaz also obtained a rare jury verdict in investors' favor after a weeklong trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high-profile securities class actions across the country, including: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.).

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in

13

the country. *See* Josefson Decl., Ex. G. Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz also served as co-lead counsel in *In re Cendant Corporation Securities Litigation*, No. 98-cv-1664 (D.N.J.), in which settlements in excess of $3 billion in cash and extensive corporate governance reforms were obtained on behalf of the class. More recently, Bernstein Litowitz obtained a $1 billion recovery for investors in *In re Wells Fargo & Company Securities Litigation*, No. 20-cv-4494 (S.D.N.Y.). Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *Hughes v. Huron Consulting Group, Inc.*, No. 09-cv-4734 (N.D. Ill.) ($38 million recovery); *Louisiana Firefighters' Retirement System v. Northern Trust Investments, N.A.*, No. 09-cv-7203 (N.D. Ill.) ($28.25 million recovery); *In re Akorn, Inc. Data Integrity Securities Litigation*, No. 18-cv-1713 (N.D. Ill.) ($27.5 million recovery); and *In re Navigant Consulting, Inc. Securities. Litigation*, No. 99-cv-7617 (N.D. Ill.) ($23 million recovery). Moreover, Bernstein Litowitz currently serves as lead counsel in *In re The Boeing Company Aircraft Securities Litigation*, No. 19-cv-2394 (N.D. Ill.). *See Boeing*, 2019 WL 6052399, at *9 n.12 (noting Bernstein Litowitz's "extensive experience and record of success on behalf of investors in many substantial securities fraud class actions").

In addition to working together to investigate the class's claims and file the *Cape Coral* action, Kessler Topaz and Bernstein Litowitz have a history of successfully prosecuting securities class actions together, including several cases in this District and before this Court. For example, in *In re Baxter International Inc. Securities Litigation*, No. 1:19-cv-07786 (N.D. Ill.) (Ellis, J.), Kessler Topaz and Bernstein Litowitz served as lead counsel and achieved a $16 million recovery

for investors, and in *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (N.D. Ill.) (Alonso, J.), Kessler Topaz and Bernstein Litowitz served as lead counsel and achieved a $450 million recovery for investors. Ultimately, the firms' joint prosecutions have resulted in recoveries collectively exceeding $6 billion. *See, e.g., In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Sec. Litig.*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery); *In re Luckin Coffee Inc. Sec. Litig.*, No. 20-cv-1292 (S.D.N.Y.) ($175 million recovery); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery).

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve the Pension Funds' selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class.

## IV. CONCLUSION

For these reasons, the Pension Funds respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint the Pension Funds as Lead Plaintiff; (3) approve the Pension Funds' selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: October 25, 2024

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson (Bar No. 672453)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

15

and

Hannah Ross, *pro hac vice* forthcoming
Scott R. Foglietta, *pro hac vice* forthcoming
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
scott.foglietta@blbglaw.com

**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**
Naumon A. Amjed, *pro hac vice* forthcoming
Darren J. Check, *pro hac vice* forthcoming
Ryan T. Degnan, *pro hac vice* forthcoming
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for the Pension Funds and Proposed*
*Lead Counsel for the Class*