UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-07696 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| METHODE ELECTRONICS, INC., DONALD W. DUDA, and RONALD L.G. TSOUMAS, | |
| Defendants. | |

**DEKALB COUNTY PENSION FUND'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.     DEKALB HAS THE LARGEST LOSSES BASED ON THE TRANSACTIONS FILED BY MOVANTS ON THE PSLRA DEADLINE .................................................. 4

II.    GENESEE IS NOT ADEQUATE TO SERVE AS LEAD PLAINTIFF IN THIS CASE ................................................................................................................................. 5

III.   THE MICHIGAN GROUP IS AN IMPROPER LAWYER-DRIVEN GROUP ............. 9

IV.   DEKALB IS THE MOST ADEQUATE LEAD PLAINTIFF MOVANT AND SHOULD BE APPOINTED LEAD PLAINTIFF .............................................................. 12

V.    DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE MILLER FIRM AS LIAISON COUNSEL SHOULD BE APPROVED ................ 14

CONCLUSION ...................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Able Labs. Sec. Litig.*,
    425 F. Supp. 2d 562 (D.N.J. 2006) .................................................................................................5

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010)..........................................................................................12

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19-cv-2394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)...........................................................9

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009) ..................................................................................................11

*Camp v. Qualcomm Inc.*,
    No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Ca. Jan. 22, 2019) .................................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .................................................................................................12, 13

*First Trust Investor Group v. First Trust Advisors LP*,
    No. 08 C 5213, Order (N.D. Ill. Jan. 15, 2009), ECF No. 77 .....................................................11

*Hill v. Tribune Co.*,
    No. 05 C 2602, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) .....................................................10

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
    No. 14 Civ. 8495(RMB), 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015)................................6

*Johnson v. Tellabs, Inc.*,
    214 F.R.D. 225 (N.D. Ill. 2002).....................................................................................................13

*Karp v. Diebold Nixdorf, Inc.*,
    No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ..............................6, 8

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) ...........................10

*Lowthorp v. Mesa Air Grp. Inc.*,
    No. CV-20-00648-PHX-MTL, 2021 WL 3089118 (D. Ariz. July 22, 2021).........................12

*Mayo v. Apropos Tech., Inc.*,
    No. 01 C 8406, 2002 WL 193393 (N.D. Ill. Feb. 7, 2002)....................................................13

*Micholle v. Ophthotech Corp.*,
    No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)...................................7

*In re Motorola Sec. Litig.*,
   No. 03 C 287, 2003 WL 21673928 (N.D. Ill. July 16, 2003) ....................................................10

*Nager v. Websecure, Inc.*,
   No. CIV.A. 97-10662-GAO, 1997 WL 773717 (D. Mass. Nov. 26, 1997) ..............................9

*Pardi v. Tricida, Inc.*,
   No. 21-CV-00076-LHK, 2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ...................................10

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ................................8

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001).....................................................................................10

*Rodriguez v. DraftKings Inc.*,
   No. 21 Civ. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ..................................8

*Schriver v. Impac Mortg. Holdings, Inc.*,
   No. SACV 06-31 CJC (RNBx), 2006 WL 6886020 (C.D. Cal. May 2, 2006)........................11

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) ...............................................................................................6

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) ...........................................5, 10

*Taubenfeld v. Career Educ. Corp.*,
   No. 03 C 8884, 2004 WL 554810 (N.D. Ill. Mar. 19, 2004) ..................................................12

*Tecku v. Yieldstreet, Inc.*,
   No. 20 Civ. 7327 (VM), 2022 WL 3584942 (S.D.N.Y. Aug. 22, 2022) ................................10

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007)................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)................................................................................................................8

15 U.S.C. §78u-4(a)(2)(A)(iv) ..........................................................................................................4

15 U.S.C. §78u-4(a)(3)(A)(i)(II)........................................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)...............................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(v) .........................................................................................................14

**Other Authorities**

Fed. R. Civ. P 23(a)(4) ...................................................................................................................13

Anne Cullen,
   *More Judges Are Demanding Diversity Among Class Counsel*,
   Law360 (July 16, 2020) ............................................................................................................14

Ralph Chapoco,
   *Calls for Lawyer Diversity Spread to Complex Class Litigation*,
   Bloomberg Law (July 30, 2020) ..............................................................................................15

DeKalb respectfully submits this memorandum of law in opposition to the competing lead plaintiff motion filed by the Michigan Group[1] and in further support of its motion: (1) for appointment as Lead Plaintiff; (2) approval of the Faruqi Firm as Lead Counsel; and (3) for such other relief as the Court may deem just and proper.[2]

## INTRODUCTION

October 25, 2024, was the statutory PSLRA deadline for shareholders to file their sworn certifications reporting all their Methode transactions in support of motions to be appointed lead plaintiff. Motions and certifications were filed by the following: (i) DeKalb (ECF No. 18); (ii) the Michigan Group (ECF No. 26); and (iii) a group consisting of the City of Cape Coral Municipal General Employees' Retirement Plan, Michigan Electrical Employees' Pension Plan and Allegheny County Employees' Retirement System (the "Pension Funds Group") (ECF No. 14).

Based on the sworn certifications filed on October 25 DeKalb is the presumptive Lead Plaintiff. The movants' losses were as follows:

**DeKalb – $724,440.17 (ECF No. 22-2)**

Michigan Group total – $618,536.50 (ECF No. 26-2)[3]

---

[1] The "Michigan Group" refers to City of Detroit General Retirement System ("Detroit"), Genesee County Employees' Retirement System ("Genesee") and City of Monroe Employees' Retirement System ("Monroe"). ECF Nos. 26-29. Terms not otherwise defined herein have the same meaning as in the DeKalb's opening Memorandum of Law (the "Opening Brief"). *See* ECF No. 19.

[2] All movants agreed that this Action should be consolidated with the related case, *City of Cape Coral Municipal General Employees' Retirement Plan v. Methode Electronics, Inc., et al.*, No. 1:24-cv-09654 (the "*Cape Coral* Action"). This Court consolidated the two cases at the hearing held on October 31, 2024. ECF No. 41.

[3] *See* Declaration of James M. Wilson, Jr. ("Wilson Decl."), Ex. A (Genesee's PSLRA Certification (dated Oct. 10, 2024) and Ex. B (Loss Chart reflecting Genesee transactions that were reported on Oct. 25, 2024). The losses of $618,536.50 are based on the transactions reported by Detroit with losses of $468,857.31 and Monroe with losses of $95,319.89 (*see* Wilson Decl., Ex. C) plus Genesee's losses of $54,359.30 reflected in Ex. B.

1

Pension Funds Group total – $492,572.93 (ECF No. 20-1)

Based on the transactions timely reported on October 25, DeKalb clearly has the largest financial interest in this case, is an experienced institutional investor with a prover track record of success as a Lead Plaintiff and having met all the requirements of Rule 23 for adequacy and typicality, should be appointed lead plaintiff. *See* ECF Nos. 18, 19, 22.[4]

The Michigan Group however, then claimed - through its counsels' arguments in a legal brief and an unsworn loss chart that its counsel created - that the groups' total losses are $812,789 and therefore larger that DeKalb's losses. *See* Michigan Group Opening Br. (ECF No. 28) at 4; Michigan Group Loss Chart (ECF No. 26-3). Finally, on November 4, 2024, ***without mention of the original sworn certification, Genese filed a new and conflicting certification which increased its losses.*** (ECF No. 40). This Court should reject this claimed aggregated loss and deny the Michigan Group's motion for lead plaintiff.

The Michigan Group's claimed losses are overstated and not supported by the transactions that were reported by its group members on the October 25 deadline, **to wit:** Genesee reported transactions on October 25th that, based on DeKalb's counsel's calculations, reflect losses of only $54,359.30, not the $248,611.37 losses its counsel calculated in its worksheet to report aggregated loss of $812,789. *See* Wilson Decl., Ex. B (Loss Chart Based On Genesee Certification Filed Oct. 25). This Court should not consider the Michigan Group's claimed loss of $812,789, which relied on its attorney's calculations that were based on certain transactions that were not timely reported by any group member. At most, the Court should consider the Michigan Group's aggregated losses based on Genesee's sworn transactions that were filed with the other group member's PSLRA

---

[4] The Pension Funds Group, with the lowest losses, has withdrawn its motion for lead plaintiff. ECF No. 38. The Pension Funds are consequently no longer in contention for Lead Plaintiff in this case.

Certifications on October 25, which losses, as reflected above, are over $100,000 lower than DeKalb's losses of **$724,440.17.**

Moreover, Genesee's actions demonstrate that it is not suited to serve as a lead plaintiff in this case. After the Michigan Group's inaccurate filing was raised with the Court by DeKalb, Genesee filed another PSLRA Certification that includes 27 new transactions not initially reported but which its counsel claims were reflected in counsel's loss calculation. *See* ECF No. 40-1, Wilson Decl., Ex. D. Genesee did not bother to retract the original PSLRA Certification, did not identify its new PSLRA Certification as a "corrected" or "supplemental" version of its original Certification, or offer any explanation for the significant changes and claimed original inaccuracies. Moreover, there is no indication that Genesee consulted with or informed the other members of the Michigan Group that it had filed an incorrect PSLRA Certification that it sought to fix. Genesee's failure to accurately report its transactions and its belated and cavalier effort to rectify such significant material errors without explanation in its PSLRA sworn certification are evidence that Genesee is not suited to serve as a lead plaintiff in this case. Should Genesse be found to be an inadequate movant, the remaining two members of the Michigan Group would have losses of approximately $564,177.20, far lower than DeKalb's losses.

Finally, the material error in the Michigan Group's filing, its failure to take any action to correct the error until after the October 31 status conference, the ongoing failure to offer any explanation for the material error or clarification by group members how they will ensure against the possibility of such material errors occurring in the future undermines its assertion that it can adequately and fairly work together as a group to supervise its counsel on behalf of class members in this case. Indeed, the Michigan Group appears to be a classic lawyer-driven group of unrelated

investors that were somewhat sloppily cobbled together solely to aggregate losses to support a motion for lead plaintiff and lead counsel and should be rejected in its entirety.

At bottom, DeKalb is a well-respected institutional investor that has served as lead plaintiff in other securities cases that has recovered hundreds of millions of dollars for investors. It is seeking to be appointed sole lead plaintiff in this case and has demonstrated that it has the largest losses of all movants and otherwise meets the adequacy and typicality requirements of Rule 23. DeKalb respectfully submits that its motion for appointment as Lead Plaintiff and approval of its counsel Lead Counsel should be granted.

**ARGUMENT**

**I. DEKALB HAS THE LARGEST LOSSES BASED ON THE TRANSACTIONS FILED BY MOVANTS ON THE PSLRA DEADLINE**

The PSLRA requires that on the deadline identified in the PSLRA notice (15 U.S.C. §78u-4(a)(3)(A)(i)(II)), each movant seeking to serve as a representative party on behalf of the class must provide a sworn certification, which shall be personally signed by such movant that *inter alia* sets forth all of the transactions of the plaintiff [movant] in the security that is the subject of the complaint during the class period specified in the complaint. 15 U.S.C. §78u-4(a)(2)(A)(iv). The Michigan Group failed to meet this stringent requirement: its aggregate losses are actually approximately $194,252.50 lower than the reported $812,789 losses that were calculated by its attorneys based on transactions that were not timely certified by Genesee in the Michigan Groups' PSLRA Certifications.

Genesee, one of the three group members in the Michigan Group, reported transactions on October 25th that, based on DeKalb's counsel's calculations, reflect losses of only $54,359.30. *See* Wilson Decl., Ex. B (Loss Chart for Genesee reflecting transactions that were reported on Oct. 25). However, the Michigan Group's counsel calculated Genesee's losses to be $248,611.37 and

4

reflected these losses in its work product that it filed with the Michigan Group's lead plaintiff motion papers. *See* Wilson Decl., Ex. C. This loss calculation is based on 27 transactions that are not included in Genesee's PSLRA Certification that it filed with the other Michigan Group members' PSLRA Certifications on October 25, 2024. *Compare* ECF No. 26-2 at 7 *with* ECF No. 40-1 at 4.

This Court should not consider the Michigan Group's claimed loss of $812,789, which relied on its attorney's calculations that were based on certain transactions that were not reported by any group member. *See e.g.*, *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *2-3 (N.D. Ill. Oct. 17, 2002) (refusing to allow movant to modify amount of financial loss to correct for arithmetic error in contravention of the PSLRA's strict certification requirements); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 565-66 & n.2 (D.N.J. 2006) (rejecting increased financial loss submitted after the lead plaintiff deadline). At most, if the Court considers Genesee's transactions at all (which it should not as argued below) then it should consider the Michigan Group's aggregated losses based on Genesee's sworn transactions that were filed with the other group member's PSLRA Certifications on October 25, which losses, as reflected above, are approximately $618,536.50, far below DeKalb's losses of **$724,440.17.**

## II. GENESEE IS NOT ADEQUATE TO SERVE AS LEAD PLAINTIFF IN THIS CASE

Genesee's actions demonstrate that it does not meet Rule 23's adequacy requirement to be appointed co-lead plaintiff with the other group members of the Michigan Group.

After the Michigan Group's inaccurate filing was brought to the Court's attention at the October 31, 2024, status conference, on November 4, 2024, Genesee filed a new PSLRA Certification that adds 27 new transactions that it did not report by the October 25 deadline. *See* ECF No. 40-1. Genesee did not bother to retract the original PSLRA Certification, did not identify

its new PSLRA Certification as a "corrected" or "supplemental" version of its October 25 PSLRA Certification, or offer any explanation for the filing of its original inaccurate PSLRA certification. This leaves the court with conflicting and competing sworn certifications from Genessee. Moreover, there is no indication that Genesee consulted with or informed the other members of the Michigan Group that it had filed an incorrect PSLRA Certification that it sought to fix. Rather, its counsel cited to the Michigan Group's opening legal brief to claim that the transactions reflected in the new PSLRA Certification were included in the Michigan Group's financial interest representation and loss chart (*see* ECF No. 40) – both of which its counsel created. Genesee's failure to accurately report its transactions and its belated and cavalier effort to rectify such significant material errors in a second untimely PSLRA sworn certification are evidence that Genesee is not suited to serve as a lead plaintiff in this case and should be rejected as a candidate to serve as co-lead plaintiff with the other Michigan Group members. Without the Genesee losses, the Michigan Group has losses of approximately $564,177.20, far lower than DeKalb's losses.

Courts routinely deny lead plaintiff motions when a movant files an inaccurate PSLRA Certification, particularly where the error "str[ikes] at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, No. 19 CIV. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (finding that lead plaintiff was an inadequate class representative after it was revealed that proposed representative submitted inaccurate trade information on his sworn certification at the lead plaintiff stage); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495(RMB), 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (noting that the inability to provide accurate data in movant's certification renders court

6

"unable to verify claimed losses which 'undermines . . . adequacy' as lead plaintiff."); *Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Ca. Jan. 22, 2019) (citing single errors in certification as additional reasons not to appoint lead plaintiff applicant with largest financial interest); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (date and price errors in submissions "militate against appointment and render [applicant] inadequate to serve as lead plaintiff.") .

In this case, Genesee is clearly inadequate to serve as a lead plaintiff. Genesee failed to timely certify **twenty-seven of its transactions in Methode securities between March 24, 2022 and April 26, 2022 by excluding them from its PSLRA certification filed on October 25**, transactions that clearly come within the Class Period alleged in the *Cape Coral* Action. ECF No. 26-2 at 5-7. Indeed, Genesee's PSLRA Certification is at odds with the transactions reflected in the loss chart created by its counsel, which attorney-created loss chart reflects over a month of transactions that accounted for a nearly $200,000.00 (or 78%) difference between losses based on transactions in its certification and the losses reported by its counsel. Failing to detect such obvious and significant errors is precisely the level of carelessness the Rule 23(a)(4) adequacy standards were designed to prevent.

It is particularly troubling that Genesee signed its original PSLRA Certification on October 10, 2024, three days **after** the *Cape Coral* Action was filed with the Class Period that clearly encompasses these 27 transactions. More astonishing is the fact that neither Genesee, the other group members in the Michigan Group nor its counsel bothered to correct Genesee's P'SLRA Certification by the October 25 lead plaintiff deadline, even though it had two full weeks from the time it signed its PSLRA Certification on October 10 to the October 25 lead plaintiff deadline to make that correction.[5]

---

[5]    The *Salem* Action was commenced on August 26, 2024 alleging a class period from June

Genesee's failure to file an accurate sworn PSLRA declaration "set[ing] forth all of the transactions of the plaintiff in the security that is subject of the complaint during the class period specified in the complaint" renders its filing defective under the PSLRA. 15 U.S.C. § 78u-4(a)(2)(A).

A district court addressed a situation similar to this one, in which an entity **understated its losses** by omitting relevant Class Period transactions in its PSLRA certification. In rejecting the movant's bid for lead plaintiff, the court in *Plaut* explained:

> [T]he certification submitted by Meitav with its original motion papers inadvertently omitted certain Class Period transactions in Goldman Sachs securities due to a clerical error. Although Meitav submits that this clerical error was a minor defect[ ], **this error nonetheless speak[s] to a level of carelessness, and causes me to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff**.

*Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (citations omitted) (internal quotation marks omitted).

Rather than promptly rectify its inaccurate PSLRA certification, Genesee only corrected the error several days after DeKalb raised the issue with the parties and the Court. *See e.g. Karp*, 2019 WL 5587148, at *6 (movant found inadequate where it took them two weeks to correct misstated losses); *see also Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (declining to appoint as lead plaintiff movant who corrected inaccurate trade information three days after errors were brought to movant's attention by competing movant).

Moreover, Genesee has proceeded in a cavalier manner with respect to meeting its statutory requirements under PSLRA. In addition to filing an inaccurate certification, it failed to alert the Court to the fact that its new PSLRA Certification reflected significant and material modifications to its original PSLRA Certification. These repeated errors are not reflective of an investor who cares about

---

23, 2022 to March 6, 2024.

acting as a fiduciary on behalf of the Class, raises additional concerns about its ability to aggressively and effectively pursue the litigation and "casts sufficient doubt on [movant's] adequacy as a representative plaintiff . . . ." *Nager v. Websecure, Inc.*, No. CIV.A. 97-10662-GAO, 1997 WL 773717, at \*1 n.1 (D. Mass. Nov. 26, 1997); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2020 WL 476658, at \*5 (N.D. Ill. Jan. 28, 2020) (denying movants' motion where errors in PSLRA certification demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *see also In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at \*8 n.8, \*10 (D.N.J. Sept. 7, 2007) (finding movant inadequate due in part to "misinformation" in signed certification).

Because the foregoing demonstrates Genesee's inability to adequately serve as lead plaintiff, the Court should disregard Genesee as a member of the Michigan Group, consider only those transactions reported on October 25 by Detroit and Monroe, which collectively reflect losses of approximately $564,177.20, an amount that still is far lower than the $724,440.17 in losses claimed by DeKalb.

## III.    THE MICHIGAN GROUP IS AN IMPROPER LAWYER-DRIVEN GROUP

Finally, the material error in the Michigan Group's filing on October 25, 2024, its failure to take any action to correct the error until after DeKalb notified the Court, and the ongoing failure to explain how the group allowed this material error to be made or any clarification how the Michigan Group will work together going forward to ensure that such material errors will not occur in the future undermines its assertion that it can adequately and fairly work together as a group to supervise its counsel on behalf of class members in this case. On this basis, the Michigan Group's motion for lead plaintiff should be denied.

"The purpose behind the PSLRA is to prevent lawyer-driven litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class

of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs [*sic*] counsel.'" *In re Motorola Sec. Litig.*, No. 03 C 287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003) (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y.1998)); *Hill v. Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("The lead plaintiff provision of the PSLRA is designed to contribute to the litigation being investor-driven instead of lawyer-driven.").

While small groups of investors may be appointed lead plaintiff under the PSLRA, they must demonstrate an ability to work together and further the best interests of absent class members. Here, the Michigan Group has demonstrated that they are not a cohesive group. *See e.g., Tecku v. Yieldstreet, Inc.*, No. 20 Civ. 7327 (VM), 2022 WL 3584942, at *3 (S.D.N.Y. Aug. 22, 2022) (group of investors failed to meet burden to show how they would work together to manage the litigation); *Pardi v. Tricida, Inc.*, No. 21-CV-00076-LHK, 2021 WL 1381271, at *1-2 (N.D. Cal. Apr. 2, 2021) (group failed to meet burden to show that it would function cohesively when one of its members filed a competing lead plaintiff motion with another law firm); *Singer*, 2002 WL 31356419, at *2 (investor group inadequate because one group member had authorized another law firm to file "conflicting initial filing" and other members' "mis-communication" concerning filing).

Courts also "have cautioned . . . that groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *3 (D. Colo. May 4, 2009); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001).

While the Michigan Group filed a Joint Declaration purporting that the members have an ill-defined familiarity with each other, the information provided is not adequate to show that they can

10

act cohesively to affirmatively control the mechanics of this litigation. Indeed, its actions to date demonstrate the contrary. For starters, the Joint Declaration submitted by the Michigan Group (ECF No. 26-4) fails to present any evidence that the members of Michigan Group "have ever communicated in a meaningful way." *Buettgen v. Harless,* 263 F.R.D. 378, 381 (N.D. Tex. 2009). Nor does the Joint Declaration provide an "explanation of [how,] why [or when] its members combined into [a] group[] in the first place" such as whether it was formed at the initiative of its counsel. *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *8 (C.D. Cal. May 2, 2006). The Joint Declaration similarly fails to identify a single prior occasion where any of the funds served together in prior litigation. Also absent from the Joint Declaration are the details necessary to show how Michigan Group can effectively execute its role as lead plaintiff, such as its leadership, decision-making structure or any evidence of how the funds intend to work together to supervise its counsel.

Instead, the Joint Declaration is limited to conclusory statements and general information about the Michigan Group's pre-existing relationship because of their "close proximity to one another", shared membership to the Michigan Association of Public Employee Retirement Systems and apparent unidentified "shared advisors." ECF No. 26-4 ¶ 7. Moreover, the Joint Declaration assumes apparent cohesiveness because of a single joint conference call held amongst the funds where the discussion was limited to their "good faith efforts to reach consensus with respect to all litigation decisions" and process of resolving disagreements by a "simple majority vote." *Id.* at ¶ 9. Other than mere happenstance that the Michigan Group shares membership in a related organization, Michigan Group does not show "itself to be truly a cohesive group" that would "be able to operate in such a unified and efficient manner." *First Trust Investor Group v. First Trust Advisors LP*, No. 08 C 5213, Order at 2, 3 (N.D. Ill. Jan. 15, 2009), ECF No. 77, Wilson Decl., Ex. E.

11

By contrast, DeKalb timely filed a complete and accurate PSLRA certification and is a single pension fund with a demonstrated history of acting as a representative on behalf of classes of investors for several high-profile class action lawsuits for violations of federal securities laws. *See Lowthorp v. Mesa Air Grp. Inc.*, No. CV-20-00648-PHX-MTL, 2021 WL 3089118, at *3 (D. Ariz. July 22, 2021); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 701 (W.D. Tex. 2010).

## IV. DEKALB IS THE MOST ADEQUATE LEAD PLAINTIFF MOVANT AND SHOULD BE APPOINTED LEAD PLAINTIFF

As described in its Opening Brief, DeKalb has met all of the PSLRA requirements to be appointed lead plaintiff in this case.

DeKalb timely filed a motion to be appointed lead plaintiff. *See* Opening Brief 8. Further, as demonstrated in its opening motion papers, DeKalb also has the largest financial interest in the outcome of the case of the remaining movants who otherwise satisfy Rule 23. *Id*. at 9-11.

As discussed above, the remaining movant, the Michigan Group – based on its October 25th sworn PSLRA Certifications, possesses a smaller financial interest than DeKalb in this litigation and therefore does not meet this requirement under the PSLRA to be appointed lead plaintiff. Accordingly, under the PSLRA, the Michigan Group's motion for lead plaintiff should be denied. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

DeKalb also meets the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2004 WL 554810, at *2 (N.D. Ill. Mar. 19, 2004) (As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, "the court focuses on the typicality and adequacy requirements

12

*as the only relevant considerations*.") (emphasis added). DeKalb acquired Methode securities during the Class Period, suffered damages as a result of the false and misleading statements made by Defendants, and possesses claims against Defendants under the federal securities laws. Because the factual and legal bases of DeKalb's claims are similar to those of the Class's claims, they necessarily satisfy the typicality requirements. *See Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) (finding lead plaintiff's claims typical because it purchased shares of securities at issue during the class period at prices inflated by defendants' fraudulent misconduct and suffered damage).

DeKalb will also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement of adequacy is satisfied on proof of: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See Cavanaugh*, 306 F.3d at 732-33.

As evidenced by the representations in the DeKalb's certification, *see* ECF No. 22-2, DeKalb's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 WL 193393, at *3 n.3 (N.D. Ill. Feb. 7, 2002) (movants' certifications evidenced adequacy to serve as lead plaintiff). As discussed above, DeKalb sought to and has served as a representative party on behalf of classes in other actions filed under the federal securities laws.

Further, as discussed below, DeKalb has selected and retained highly competent counsel to litigate claims on behalf of itself and the Class.

In sum, DeKalb meets all the lead plaintiff requirements under the PSLRA, and it respectfully asks the Court to appoint it Lead Plaintiff for the Action.

13

## V.  DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE MILLER FIRM AS LIAISON COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), DeKalb is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval.

DeKalb has selected the Faruqi Firm to be Lead Counsel for the Class.  The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions.  *See* Opening Brief 11-14; Ex. D, Faruqi Firm resume (ECF No. 22-4).

Further, the Faruqi Firm currently serves as lead counsel in several prominent securities class actions.  *See, e.g., Wayne v. Maxeon Solar Techs., Ltd.*, No. 24-cv-03869-EMC (N.D. Cal.) (appointed sole lead counsel for the class); *Labelle v. Future FinTech Grp., Inc.*, No. 2:24-cv-00247-JXN-JSA (D.N.J.) (appointed sole lead counsel for the class); *Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Alms v. Luminar Techs., Inc.*, No. 6:23-cv-982-JSS-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 3:21-cv-09585-AMO (N.D. Cal.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7]  Class members in securities class actions have diverse

---

[6]     *See* Ex. E (ECF No. 22-5).

[7]     *See* Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*, Law360 (July    16,    2020),    https://www.law360.com/articles/1292926/more-judges-are-demanding-

14

backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys.

## CONCLUSION

Accordingly, DeKalb respectfully requests that the Court: (1) appoint DeKalb as Lead Plaintiff for the Action; (2) approve its selection of the Faruqi Firm as Lead Counsel and the Miller Firm as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: November 26, 2024          Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:     */s/ James M. Wilson, Jr.*
         James M. Wilson, Jr.

James M. Wilson, Jr. (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff DeKalb*
*County Pension Fund and [Proposed] Lead*
*Counsel for the putative Class*

---

diversity-among-class-counsel; Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex Class Litigation*, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
53 W. Jackson Blvd., Suite 1320
Chicago, IL 60604
Telephone: 312-332-3400
Facsimile: 312-676-2676
Email: mmiller@millerlawllc.com
      lfanning@millerlawllc.com

*Attorneys for [Proposed] Lead Plaintiff DeKalb County Pension Fund and [Proposed] Liaison Counsel for the putative Class*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed on November 26, 2024 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

By:  */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.