UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:24-cv-07696 (Consolidated) |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge Sara L. Ellis Magistrate Judge M. David Weisman |
| METHODE ELECTRONICS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

THE MICHIGAN RETIREMENT SYSTEMS' REPLY IN SUPPORT OF LEAD
PLAINTIFF MOTION

4931-6577-5109.v1

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires exacting "proof" to rebut the presumption that the Michigan Retirement Systems are the most adequate plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). DeKalb has failed to provide any.

Unable to dispute that the Michigan Retirement Systems have the largest financial interest when properly counting the three constituent funds' reported losses, DeKalb instead contends that Genesee County is inadequate to serve as lead plaintiff because of an inconsequential discrepancy. As explained in both the November 4, 2024 Declaration (ECF 40) and the Michigan Retirement Systems' opposition brief (ECF 44 at 8), Genesee County's originally filed loss chart (ECF 26-3) and financial interest representation (ECF 28 at 4) accurately reflect Genesee County's transactions in the longer *City of Cape Coral* class period. Consequently, no legitimate argument exists that the rapidly corrected inadvertent error caused "substantial prejudice to potential class members," let alone DeKalb. *Cent. Cmty. Church of God v. Ent & Imler CPA Grp., PC*, 2005 WL 1115960, at *3 (S.D. Ind. May 9, 2005) (excusing lead plaintiff movant's mistakenly late-published PSLRA notice and appointing that movant as lead plaintiff). DeKalb's inapt authorities – all of which involved far more egregious circumstances than occurred here – do not compel a different result.[1]

---

[1] *See Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (declining to appoint individuals where they "provided the Court with little to go on with respect to their alleged capacity to manage this litigation" and erroneously overstated their alleged loss in defendant corporation securities by 34%); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (finding lead plaintiff atypical and inadequate at class certification because he relied on non-public information (personal contact with employees and the CFO of the defendant corporation) in making his investment decisions, "demonstrate[d] a lack of knowledge regarding the allegations contained in the Complaint," and provided incorrect date and price information for certain transactions on his certification); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (declining to appoint movant who claimed to purchase more shares on a single day than the publicly reported total trading volume on that day and reported transaction prices that fell outside the daily price range); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3-*4 (S.D. Cal. Jan. 22, 2019) (declining to appoint individual investor who "failed to include any basic details about himself, including where he lives or who he is specifically in his motion," "sign[ed] under penalty of perjury that he 'reviewed the complaint and authorized its filing,' however, there was indeed no filing made on [his] behalf," and "used the wrong loss calculation, which when corrected, reduces his losses by 30%"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (declining to appoint movant who did not provide the actual purchase or sale prices of transactions, listed certain weekend

- 1 -

4931-6577-5109.v1

Moreover, Genesee County's status as a sophisticated investor that acts as a fiduciary on behalf of its participants and beneficiaries, overseeing more than $400 million in assets, further cuts against DeKalb's argument. Courts have routinely found that Genesee County satisfies the Rule 23 adequacy requirement, appointing Genesee County as lead plaintiff in numerous PSLRA actions. *See Naclerio v. DocGo Inc.*, No. 1:23-cv-09476-KPF, ECF 30 (S.D.N.Y. Jan. 17, 2024) (appointing Genesee County as lead plaintiff); *Genesee Cnty. Emps' Ret. Sys. v. Driven Brands Holdings Inc.*, No. 3:23-cv-00895-MOC-DCK, ECF 20 (W.D.N.C. May 31, 2024) (appointing Genesee County and other Michigan pension funds as lead plaintiff); *Genesee Cnty. Emps' Ret. Sys. v. Kornit Digital Ltd.*, No. 2:23-cv-00888-MCA-AME, ECF 18 (D.N.J. Aug. 30, 2023) (appointing Genesee County and other institutional investors as lead plaintiff).

DeKalb's argument rings especially hollow because DeKalb's counsel has repeatedly represented lead plaintiff movants who were appointed lead plaintiff following considerably more egregious errors than it bemoans here. *See Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) (appointing lead plaintiff movant – represented by DeKalb's counsel here – notwithstanding error made in connection with initial lead plaintiff application;

---

transaction dates on his initial certification, and was forced to adjust his claimed loss from $4.1 million to $1.6 million); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (declining to appoint movant where movant and its counsel engaged in "gamesmanship" by filing an amended complaint 20 days after the lead plaintiff deadline "to include in its loss calculation certain in-and-out transactions that occurred before the first corrective disclosure alleged in the original complaint"); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (declining to appoint individual who would be subject to unique defenses as a short seller and day trader and further omitted from his certification profits from options transactions, millions of dollars' worth of trades, and short selling activity); *Nager v. Websecure, Inc.*, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (declining to appoint individual as part of a group where that movant claimed to have purchased stock in the defendant company at prices nearly 85% above where the stock was actually trading on the alleged trading date); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *2 (N.D. Ill. Jan. 28, 2020) (declining to appoint a family of purported investors who "provided virtually no information" about themselves, failed to explain their "curious trading history," and failed to explain "the seeming disconnect between [their] lifestyle and ability to purchase $40 million of Boeing shares"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *8 n.8, *10 (D.N.J. Sept. 7, 2007) (declining to appoint individual who admitted to having no contact with attorneys before signing the certification and submitted a certification "plagued with misinformation").

- 2 -

allowing movant to refile an untimely motion); *Wayne v. Maxeon Solar Techs., Ltd.*, 2024 WL 4529355, at *10 (N.D. Cal. Oct. 18, 2024) (appointing lead plaintiff movant – also represented by DeKalb's counsel – who filed a competing motion against herself with a different law firm asserting a different financial interest); *Lim v. Hightower*, 2023 WL 7979869, at *2 n.4 (N.D. Ohio Nov. 16, 2023) (appointing the Stricklands – represented by DeKalb's counsel – despite the fact that "[d]ue to a computational error, however, they underreported their total LIFO losses to be $664,049.66 in their opening Lead Plaintiff Motion" because they "subsequently submitted the Revised Loss Chart reflecting the calculation of their LIFO losses to be $840,413.19 using the corrected inputs and based on the same transactions initially reported"). Ultimately, DeKalb falls far short of providing the proof required to rebut the presumption in favor of the Michigan Retirement Systems.

Tacitly recognizing it is unlikely to prevail on its adequacy argument, DeKalb turns to its "argument [that] is greatly outweighed by the sworn certification issue" and argues this Court should overlook decades of jurisprudence from this District and deny the Michigan Retirement Systems' motion because it was "***perhaps*** cobbled together."[2] While it is true that courts in this District do not blindly appoint impermissibly large and incohesive groups of investors, the PSLRA, the Securities and Exchange Commission, and U.S. Supreme Court expressly allow or have endorsed the appointment of cohesive groups as lead plaintiff. *See China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups, so even a small shareholder could apply for lead-plaintiff status, hoping to join with other shareholders to create a unit with the largest financial interest").[3]

---

[2] *See* Transcript of Proceedings Before the Hon. Sara L. Ellis (October 31, 2024 telephonic status conference) at 6:13-14 (attached hereto as Exhibit 1) (emphasis added).

[3] *See also* 7 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §22:36 n.11 (6th ed. 2023) (a co-lead plaintiff structure "best protects the interests of the class; affords the class the benefit of combined resources to defray what may prove to be significant up-front litigation costs; and gives the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs").

- 3 -

It is thus not surprising that courts in this District – which DeKalb almost entirely ignored – regularly determine that a cohesive group of investors even without a relationship pre-existing the commencement of litigation (which is ***not*** the case here) may be appointed as lead plaintiff.[4]  *See* ECF 44 at 7 (Michigan Retirement Systems' opposition brief collecting cases); *Bang v. Acura Pharms., Inc.*, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (adopting Third Circuit view "explicitly allow[ing] small groups of investors to aggregate their losses in computing the total loss amount and act as lead plaintiff whether or not they had a pre-existing relationship") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 266-67 (3rd Cir. 2001)); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) ("'[S]o long as the group is relatively small and therefore presumptively cohesive,' however, no pre-litigation relationship is required by statute.") (citation omitted).  This is especially true where, as here, the group's "members have each provided affidavits attesting to their individual investments in [Methode], their decisions to purchase [Methode] securities without any influence of counsel, [] their willingness to serve as a representative party on behalf of a class," and their "inten[t] to make decisions based on the majority vote of its three investors." *Bang*, 2011 WL 91099, at *5.  Indeed, the Joint Declaration executed by representatives of the Michigan Retirement Systems attested to the substantial losses they suffered and their commitment to maximizing the recovery for all harmed investors.  *See* ECF 26-4 at ¶6.  Further, they attested to the funds' and their representatives' pre-existing relationships

---

[4]  The only two cases from this District that DeKalb cited in support of its argument actually support the appointment of the Michigan Retirement Systems as lead plaintiff. *See Gosselin v. First Trust Advisors L.P.*, No. 1:08-cv-05213, ECF 77-2 (N.D. Ill. Jan. 15, 2009) (appointing group of three individuals that "provided declarations explaining how the group intends to prosecute the action, consult with each other, share information, and manage the litigation" over a competing group that supplied no evidence of cohesion and sought to be represented by five separate law firms); *Singer v. Nicor, Inc.*, 2002 WL 31356419, at *2 (N.D. Ill. Oct. 17, 2002) (refusing to appoint amalgamation of three separate movants that sought to be appointed together only after the lead plaintiff deadline; and, separately declining to appoint a single institution that filed two competing motions to appoint itself as lead plaintiff with two different law firms, claiming two dramatically different losses).

"through [their] membership, along with other Michigan pension funds, in the Michigan Association of Public Employee Retirement Systems, or MAPERS," their "participat[ion] in a joint conference call wherein [they] discussed the merits of this action, the status of the proceedings, the responsibilities of a lead plaintiff appointed pursuant to the PSLRA, the Michigan Retirement Systems' ability to work together and to jointly fill the lead plaintiff role, and efforts to facilitate future communication and collaboration." *Id*. at ¶¶7-8. The Michigan Retirement Systems further agreed to resolve any disagreement by a simple majority vote. *Id.* at ¶9. Finally, among other things, they directed Robbins Geller "to prosecute this action in an efficient, cost-effective manner while obtaining the best possible result for the investor class." *Id.* at ¶11. In short, the Michigan Retirement Systems have sworn under penalty of perjury to a much greater showing of cohesiveness than courts in this District routinely find sufficient to support appointment of an investor group as lead plaintiff. Moreover, every member of the Michigan Retirement Systems has vast experience serving in representative roles in PSLRA actions, including as part of representative groups.[5] Thus, the Court can be assured that the Michigan Retirement Systems will "'operate effectively as a unit'" and, "given the claimed losses by each of these investors," they "can be counted on to monitor counsel in a sufficient manner." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *7 (N.D. Ill. Oct. 8, 2019) (citation omitted).

Finally, courts in this District have entrusted Robbins Geller as lead counsel to represent a lead plaintiff which consisted of a group of investors on numerous occasions. *See, e.g.*, *City of*

---

[5] *See In re Bristol-Myers Squibb Sec. Litig.*, No. 1:02-cv-02251 (S.D.N.Y.) (City of Detroit General Retirement System recovering $300 million as part of a lead plaintiff group); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 2:08-cv-02177 (D.N.J.) (City of Detroit General Retirement System recovering $215 million as part of a lead plaintiff group); *In re Honeywell Int'l, Inc. Sec. Litig.*, No. 2:00-cv-03605 (D.N.J.) (City of Monroe Employees Retirement System recovering $100 million as class representative, along with other institutions); *Driven Brands*, No. 3:23-cv-00895, ECF 20 (W.D.N.C. May 31, 2024) (appointing Genesee County and other Michigan pension funds as lead plaintiff); *Kornit Digital*, No. 2:23-cv-00888, ECF 18 (D.N.J. Aug. 30, 2023) (appointing Genesee County and other institutional investors as lead plaintiff).

4931-6577-5109.v1

*Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at \*9 (N.D. Ill. Apr. 18, 2012) (St. Eve, J.); *Bristol Cnty.*, 2012 WL 5471110, at \*7 (Holderman, J.); *Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at \*8 (N.D. Ill. June 26, 2018) (Dow, J.); *Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030, ECF 52 (N.D. Ill. Jan. 17, 2019) (Pallmeyer, J.); *Hudson v. GoHealth, Inc.*, No. 1:20-cv-05593, ECF 61 (N.D. Ill. Dec. 10, 2020) (Coleman, J.); *Klein v. Iterum Therapeutics plc*, No. 1:21-cv-04181, ECF 43 (N.D. Ill. Nov. 3, 2021) (Feinerman, J.); *Allison v. Oak Street Health, Inc.*, No. 1:22-cv-00149, ECF 30 (N.D. Ill. Mar. 25, 2022) (Kennelly, J.); *Chow v. Archer-Daniels-Midland Co.*, No. 1:24-cv-00634, ECF 41 (N.D. Ill. Apr. 11, 2024) (Durkin, J.)

In sum, DeKalb's speculation falls far short of the required "proof" to rebut the presumption in favor of the Michigan Retirement Systems. As such, DeKalb's motion should be denied. The Michigan Retirement Systems should be appointed Lead Plaintiff.

DATED: December 10, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIELLE S. MYERS (ILND-GB-5711)
MICHAEL ALBERT
KENNETH P. DOLITSKY

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

- 6 -

4931-6577-5109.v1

ROBBINS GELLER RUDMAN & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)
200 S. Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
cbdunn@asherkellylaw.com

Additional Counsel

4931-6577-5109.v1