UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>            v.<br><br>METHODE ELECTRONICS, INC., DONALD W. DUDA, and RONALD L.G. TSOUMAS,<br><br>                Defendants. | Case No. 1:24-cv-07696<br><br><u>CLASS ACTION</u> |

**DEKALB COUNTY PENSION FUND'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND LIAISON COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT .......................................................................................................................................4

I.  GENESEE'S ERRORS IN ITS PSLRA CERTIFICATION ARE MATERIAL AND DISQUALIFIES IT AND THE MICHIGAN GROUP AS A WHOLE ............................4

II.  DEKALB SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ............ 10

III.  DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE MILLER FIRM AS LIAISON COUNSEL SHOULD BE APPROVED ................ 12

CONCLUSION................................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Bhojwani v. Pistiolis*,
  No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 31, 2007).........................7

*In re the Boeing Co. Aircraft Sec. Litig.*,
  No. 19-cv-2394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)......................................................2

*Camp v. Qualcomm Inc.*,
  No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019 ..................................6

*Chill v. Green Tree Financial Corp.*,
  181 F.R.D. 398 (D. Minn. 1998).................................................................................................9

*Christakis v. Fifth Third Bancorp*,
  No. 20 C 2176, 2020 WL 9720422 (N.D. Ill. June 29, 2020) (Ellis, J.)...................................10

*Doherty v. Pivotal Software, Inc.*,
  No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)....................................9

*First Trust Investor Group v. First Trust Advisors LP*,
  No. 08 C 5213, Order (N.D. Ill. Jan. 15, 2009) (ECF No. 46-5) ...............................................3

*Johnson v. Tellabs, Inc.*,
  214 F.R.D. 225 (N.D. Ill. 2002)................................................................................................11

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ....................................7

*Khunt v. Alibaba Group Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015).........................................................................................9

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....................................................10

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
  No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019).....................................6

*Mayo v. Apropos Tech., Inc.*,
  No. 01 C 8406, 2002 WL 193393 (N.D. Ill. Feb. 7, 2002).......................................................11

*In re Nike, Inc. Securities Litigation*,
  No. 3:24-cv-00974-AN, 2024 WL 4579499 (D. Or. Oct. 25, 2024) .........................................9

*Plaut v. Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ............................6, 8

*Reitan v. China Mobile Games & Entertainment Group, Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................9

*Rodriguez v. DraftKings Inc.*,
No. 21 Civ. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .............................7, 8

*In re Safeguard Scis.*,
216 F.R.D. 577 (E.D. Pa. 2003)................................................................................. 7-8

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .......................................................................................8

*Singer v. Nicor, Inc.*,
No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) .................................................1

*In re Spero Therapeutics, Inc. Securities Litigation*,
No. 22-CV-3125 (LDH) (RLM),
2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ...........................................................9

*Taubenfeld v. Career Educ. Corp.*,
No. 03 C 8884, 2004 WL 554810 (N.D. Ill. Mar. 19, 2004) .....................................................11

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................6

*Villare v. ABIOMED, Inc.*,
No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020)....................................9

**Statutes**

15 U.S.C. § 78u-4(a) ..............................................................................................4, 11, 12

**Other Authorities**

Anne Cullen,
*More Judges Are Demanding Diversity Among Class Counsel*,
Law360 (July 16, 2020) ....................................................................................12

Ralph Chapoco,
*Calls for Lawyer Diversity Spread to Complex Class Litigation*,
Bloomberg Law (July 30, 2020), ...........................................................................13

DeKalb County Pension Fund ("DeKalb") submits this reply to the opposition filed by movant the Michigan Group[1] ("Michigan Group Opp.") (ECF No. 44) and in further support of its motion for an Order: (1) appointing DeKalb as Lead Plaintiff; (2) approving DeKalb's selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel Miller Law LLC (the "Miller Firm") as Liaison Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.

## INTRODUCTION

DeKalb opposes the lead plaintiff motion filed by the Michigan Group on the following grounds:

- **DeKalb is the presumptive lead plaintiff under the statute** - this Court should only count losses based on transactions reported by the **movants (not their lawyers)** in the movants' timely filed PSLRA Certifications. *See Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *2-3 (N.D. Ill. Oct. 17, 2002) (court "will not consider the candidates' amendments of their amount of financial losses made after the filing deadline."). Based on those PSLRA Certifications, DeKalb's losses of $724,440.17 far exceed the Michigan Group's approximate aggregated loss of $618,536.50.[2] DeKalb Opp. 1-4.

---

[1]     All terms not defined herein have the same meaning in DeKalb's Memorandum of Law in Support of its Motion for: (1) Consolidation of the Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Counsel and Liaison Counsel ("DeKalb's Opening Br.") (ECF No. 19) and DeKalb's Memorandum of Law in Opposition to the Competing Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("DeKalb Opp.") (ECF No. 45). All citations and internal quotation marks are omitted and all emphases are added unless otherwise noted.

[2]     *See* Declaration of James M. Wilson, Jr. ("Wilson Decl."), Ex. B. ECF No. 46-2 (that calculates Genesee's losses based solely on the transactions it reported on October 25, 2024). DeKalb further meets the adequacy and typicality requirements of Rule 23, which the Michigan Group has not disputed.

1

- **Genesee is not suited to be appointed co-lead plaintiff with the other Michigan Group members and should be excluded** – Genesee *knowingly* filed a PSLRA Certification that was incorrect at the time it was filed, did not attempt to correct it until the issue was raised by DeKalb, filed a second late PSLRA Certification that its lawyers – not Genesee - argue should be operative (ECF No. 40), and still has failed to attest to the basis for its egregious error. *See In re the Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (movants' "trading records reflect that the loss charts [the movants] submitted with their original declarations were patently incorrect. . . . [the movants' motion] offers no explanation for the error but attempts to dismiss it as inconsequential . . . . [which] does nothing to mitigate the fact that [the movants] submitted information in support of their application as lead plaintiff that they knew was inaccurate . . . . One of two things happened here: either the [the movants] reviewed the loss charts and neglected to correct them despite errors that should have been obvious to them based on their own trading, or they didn't review the loss charts at all. Under either scenario, their failure to discover these obvious errors independently warrants a determination that the [movants] will not be adequate representatives of the class." The Michigan Group's losses based only on group members Detroit and Monroe are approximately $564,177.20, far less than DeKalb's losses of $724,440.17. (DeKalb Opp. 5-9); and

- **The Michigan Group is not suited to be Lead Plaintiff and its motion should be denied** – contrary to boilerplate and conclusory assertions in its Joint Declaration (ECF No. 26-4), the Michigan Group appears unable or unwilling to work together even at this early stage of the case to rectify a material error committed by one its group members, Genesee, in its Lead Plaintiff filing, and appears to be relying exclusively on its lawyers to come up with a work-around for this problem. The Michigan Group has demonstrated that it is not a cohesive group and is incapable of supervising its lawyers and representing the interests of absent class members and its motion should be denied entirely. DeKalb Opp. 9-12; Wilson Decl., Ex. E (copy of *First Trust Investor Group v. First Trust Advisors LP*, No. 08 C 5213, Order at 2, 3 (N.D. Ill. Jan. 15, 2009) (ECF No. 46-5).[3]

Any of the above deficiencies by the Michigan Group is grounds to deny its motion for Lead Plaintiff and appoint DeKalb. Nevertheless, the Michigan Group tries to downplay its and Genesee's egregious error – and its late and cavalier effort to correct the error - characterizing it as a mistake that was "inadvertent and immaterial" and "since-corrected." Michigan Group Opp. 7-10.[4] This argument does not hold water. Genesee failed to timely certify **27 transactions** during the Class Period, which transactions its lawyers argued account for nearly **$200,000** in claimed

---

[3] The PSLRA provides that a group of shareholders may be appointed Lead Plaintiff and courts appoint small groups to be Lead Plaintiff, if appropriate. As pointed out by the Michigan Group, DeKalb has sought to be appointed co-lead plaintiff in prior cases. *See* Michigan Opp. 7, n. 3. However, in this case, the Michigan Group made an inadequate initial showing in its opening Lead Plaintiff motion papers that it is a cohesive group that can serve the interests of the class **and** its subsequent actions and inactions regarding Genessee's materially incorrect PSLRA Certification are proof that the Michigan Group is inadequate. *See* DeKalb Opp. 9-12.

[4] "Michigan Group Opp." refers to the Michigan Retirement Systems' Opposition to Competing Lead Plaintiff Motions. ECF No. 44.

3

losses. DeKalb Opp. 2-3. Neither the Court nor other movants, who complied with the PSLRA deadline and reported all their transactions, had any way to scrutinize and verify the losses that Genesee's lawyers calculated based on the October 25 lead plaintiff filing.[5] Indeed, absent DeKalb's involvement, this issue may not have seen the light of day until they were raised by Defendants much later at the class certification stage, possibly jeopardizing class claims at that point. Contrary to the case law cited by the Michigan Group – which involved truly minor and excusable errors – courts reject Lead Plaintiff movants such as Genesee and the Michigan Group as whole who cannot follow critical PSLRA's statutory mandates on such a significant and critical level.

For these reasons, as well as those articulated previously and below, DeKalb respectfully requests that the Court denies the Michigan Group's motion and grant DeKalb's motion for appointment of Lead Plaintiff and approve its selection of the Faruqi Firm as Lead Counsel.

## ARGUMENT

I.  **GENESEE'S ERRORS IN ITS PSLRA CERTIFICATION ARE MATERIAL AND DISQUALIFIES IT AND THE MICHIGAN GROUP AS A WHOLE**

The PSLRA requires that on the deadline identified in the PSLRA notice (15 U.S.C. § 78u-4(a)(3)(A)(i)(II)), each movant seeking to serve as a representative party on behalf of the class must provide a sworn certification, which shall be personally signed by such movant that *inter alia* sets forth all of the transactions of the plaintiff [movant] in the security that is the subject of the complaint during the class period specified in the complaint. 15 U.S.C. § 78u-4(a)(2)(A)(iv). On the PSLRA deadline of October 25, 2024, the Michigan Group certified to transactions that are approximately $194,252.50 **lower** than the losses of $812,789 that were calculated by its attorneys

---

[5]     Genesee's counsel appears to have had known about and had access to transactions that were not reported by Genesee at the time of the Lead Plaintiff filings on October 25, since their loss chart calculating losses reflects numerous transactions that were not certified by Genesee by the deadline.

based on transactions that were not timely certified by Genesee in the Michigan Groups' PSLRA Certifications. DeKalb Opp. 4.

Genesee filed its certified transactions on October 25th that, based on DeKalb's counsel's calculations, ***reflect losses of only $54,359.30***. *See* ECF No. 46-2 (Loss Chart for Genesee reflecting transactions that were reported on Oct. 25). However, the Michigan Group's counsel calculated Genesee's losses to be $248,611.37 and reflected these losses in its work product that it filed with the Michigan Group's lead plaintiff motion papers. *See* ECF No. 46-3. This loss calculation is based on 27 transactions that are not included in Genesee's PSLRA Certification that it filed with the other Michigan Group members' PSLRA Certifications on October 25, 2024. *Compare* ECF No. 26-2 at 7 *with* ECF No. 40-1 at 4. *See* DeKalb Opp. Br. 2, 4-5.

When this issue was raised by DeKalb at the October 31, 2024, status conference, Genesee waited an additional four days to report and certify the 27 transactions it failed to include in its October 25th PSLRA Certification filed with its lead plaintiff motion. Also troubling is the fact that, when Genesee filed its new PSLRA Certification, it failed to retract its original PSLRA Certification containing the errors, did not identify its new PSLRA Certification as a "corrected" or "supplemental" version of its PSLRA Certification filed on October 25th, and did not offer any explanation for the filing of its original inaccurate PSLRA Certification. *See* DeKalb Opp. Br. 5-6. This is not the conduct of a plaintiff that is adequate to diligently and responsibly lead a class action on behalf of a large group of investors.

The Michigan Group now tries to downplay these numerous significant deficiencies characterizing them as "immaterial," "inadvertent" and "since-corrected." Michigan Group Opp. 7-10. These characterizations are not well founded and should be rejected by this Court.

5

Genesee's exclusion of 27 transactions in its PSLRA Certification, accounting for a near $200,000.00 (or 78%) discrepancy in its certified losses and losses reported by its counsel is by no means a "minor" or "immaterial" mistake. This characterization is particularly baseless where the errors represent the difference between being the movant with the largest financial loss and being the movant with the second greatest financial loss, in many instances the determining factor in the selection of a lead plaintiff. Indeed, Courts have considered errors far less egregious than those made by Genesee to be disqualifying. For example, in *Tomaszewski v. Trevena, Inc.*, the court found that errors in a movant's certification amounting to "overstat[ed] . . . losses by $518.61. . . . [represented] a substantial degree of carelessness and raise doubt as to whether [the movant] will fairly and adequately represent the best interests of the class." 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019). Similarly, in *Li Hong Cheng v. Canada Goose Holdings Inc.*, a movant who otherwise had the greatest losses was disqualified simply because he failed to disclose that he "previously sought appointment in [a prior] action." No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019). In *Camp v. Qualcomm Inc.*, the court cited a movant's single error in its certification as to the sale price on a single day as an additional reason not to appoint the lead plaintiff applicant with the largest financial interest. No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019).

Courts regularly treat errors or inconsistencies in sworn PSLRA certifications as disqualifying because they "nonetheless speak[s] to a level of carelessness, and cause[] [the court] to doubt whether [the movant] possesses the necessary adequacy and sophistication to be lead plaintiff." *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (movant disqualified for filing a PSLRA certification that omitted class period transactions without making any attempt to explain the circumstances for the error, which

error even if "minor" spoke to a level of carelessness that caused the court to doubt its adequacy and sophistication); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that discrepancies in certification "indicate[] a certain carelessness about detail that undermines the adequacy of [the movant] as a lead plaintiff."); *Rodriguez v. DraftKings Inc.,* No. 21 Civ. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("Minor or not…the errors nonetheless speak[ ] to a level of carelessness that rightly calls into doubt [the movant's] adequacy to be lead plaintiff.") (quoting *Plaut*, 2019 WL 4512774 at *5); *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, No. 19 CIV. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (holding that certification errors are particularly disqualifying where it "str[ikes] at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation.").

The Michigan Group's contention that its Certification errors were "inadvertent" is disingenuous at best. Genesee signed its original PSLRA Certification that omitted the 27 transactions from the time period of the *Cape Coral* Action on October 10, 2024, three days **after** the *Cape Coral* Action was filed. Neither Genesee, the other group members in the Michigan Group, nor its counsel bothered to correct Genesee's PSLRA Certification by the October 25th lead plaintiff filing date, even though it had an additional two full weeks from the time it signed its PSLRA Certification on October 10th to the October 25th lead plaintiff deadline to do so.[6] *See* DeKalb Opp. Br. 7. That its "sworn statement in a Certification Pursuant to the Federal Securities Laws omits a significant number of trades . . . leads [a] Court to believe that the [Michigan Group's] misstatement was more than [a] mere clerical mishap." *In re Safeguard Scis.*, 216 F.R.D.

---

[6]     The *Salem* Action was commenced on August 26, 2024 alleging a class period from June 23, 2022 to March 6, 2024.

7

577, 582 n.4 (E.D. Pa. 2003). In any event, Courts have found that a "[p]laintiff's inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that . . . counsel against a finding of adequacy." *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (plaintiff's "inadvertence . . . to the PSLRA's certification requirements . . . counsel[ed] against a finding of adequacy" because "***on two occasions [plaintiff], filed sworn certifications …with false[ ] stat[ements]***."); *see also Plaut*, 2019 WL 4512774, at *5 (court found that "clerical error… nonetheless speaks to a level of carelessness and cause[d it] to doubt whether [the movant] possesse[d] the necessary adequacy and sophistication to be lead plaintiff.").

The Michigan Group's claim that its Certification errors have been "since-corrected," further undermines its claim to be an adequate representative for the class. *See* Michigan Group Opp. Br. 8. Even when Genesee submitted a supplemental Certification which included the 27 transactions it previously failed to certify, it did not bother to retract the original PSLRA Certification, it did not identify its new PSLRA Certification as a "corrected" or "supplemental" version of its original Certification and did not offer any explanation for its significant changes or original inaccuracies. Perhaps under rules construction, the later dated certification would be presumed to control, but a diligent movant would not leave that ambiguity outstanding. These "inconsistencies [and] . . . . numerous and varied errors" and the fact that the Michigan Group "had to have been alerted to these basic errors [by DeKalb] in the first place. . . . speaks to a level of carelessness that rightly calls into doubt [its] adequacy" and "weigh[s] heavily against [its] appointment as lead plaintiff." *DraftKings*, 2021 WL 5282006, at *9. The cavalier nature of its response only serves to heighten concerns about its adequacy.

The Michigan Group has relied on a bevy of cases in support the above arguments that are clearly inapposite here. For example, in *Reitan v. China Mobile Games & Entertainment Group,*

8

*Ltd.* (cited in Michigan Group Opp. 8), a movant sought to withdraw its "Notice of Withdrawal" after realizing, twelve days after submitting the notice, that its losses were the largest among non-withdrawing movants. 68 F. Supp. 3d 390, 393 (S.D.N.Y. 2014). In finding the movant adequate, the court noted that it "*d[id] not seek to manipulate its alleged financial losses*. [The movant wa]s simply making the same lead plaintiff motion it filed initially." *Id.* at 399. Additionally, the mistake referred to in *Khunt v. Alibaba Group Holding Ltd.* (cited in Michigan Group Opp. 8), involved a signatory who did not expressly state, in his PSLRA certification, the requisite authority he possessed to sign the document despite actually possessing such authority. 102 F. Supp. 3d 523, 538 (S.D.N.Y. 2015). In *In re Spero Therapeutics, Inc. Securities Litigation* (cited in Michigan Group Opp. 8), the movant omitted only **two transactions** (in contrast to the Michigan Group's 27 omitted transactions) that were part of an enlarged class period and did not significantly affect the movant's losses. No. 22-CV-3125 (LDH) (RLM), 2022 WL 4329471, at \*8 (E.D.N.Y. Sept. 19, 2022).

Similarly, *In re Nike, Inc. Securities Litigation* (cited in Michigan Group Opp. 9) involved a single error where the movant treated one transaction "as a sale in its Certification and as a transfer in its damages analysis." No. 3:24-cv-00974-AN, 2024 WL 4579499, at \*5 (D. Or. Oct. 25, 2024). In *Doherty v. Pivotal Software, Inc.* (cited in Michigan Group Opp. 9), the movant's certification filed with the initial complaint contained transaction history that conflicted with what was reported on its certification filed with its lead plaintiff motion. No. 3:19-cv-03589-CRB, 2019 WL 5864581, at \*7 & n.5 (N.D. Cal. Nov. 8, 2019). There, the certification filed with the movant's lead plaintiff motion contained accurate transaction history. *Id.* The movant's certifications in *Chill v. Green Tree Financial Corp.* (cited in Michigan Group Opp. 9), only "contained technical deficiencies" and did not inaccurately report their class period losses. 181 F.R.D. 398, 410-11 (D.

Minn. 1998). Finally, in *Villare v. ABIOMED, Inc.* (cited in Michigan Group Opp. 9), a movant was allowed to supplement its PSLRA certification because it based the losses reflected in its PSLRA certification on the class period for the most recent complaint, which the court later shortened for reasons unrelated to that specific movant. No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *5 & n.9 (S.D.N.Y. June 29, 2020).

None of these cases cited by the Michigan Group come close to supporting excusing the material errors made by Genesee and the subsequent inadequate and lawyer-driven effort to correct Genesee's and the entire Michigan Group's failings regarding Genesee's incorrect PSLRA Certification.

At bottom, the errors identified by DeKalb in the Michigan Group's Lead Plaintiff filing were material and demonstrates that it is not capable to represent the class in this case.

## II. DEKALB SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

As described in its Opening Brief, DeKalb has met all of the PSLRA requirements to be appointed Lead Plaintiff in this case.

DeKalb timely filed a motion to be appointed Lead Plaintiff and timely certified and reported all of its transactions that are the subject of this case. *See* DeKalb Opening Br. 8. The Michigan Group does not dispute that DeKalb meets this statutory mandate.

DeKalb's losses that are attributable to the alleged fraud are $724,440.17. DeKalb Opening Br. 9. The Michigan Group does not dispute DeKalb's losses. DeKalb therefore is the movant with the "largest financial interest in this litigation, owing to the fact that [it] make[s] up the group hav[ing] suffered the largest alleged losses." *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *Christakis v. Fifth Third Bancorp*, No. 20 C 2176, 2020 WL 9720422, at *2 (N.D. Ill. June 29, 2020) (Ellis, J.)

10

("The phrase 'largest financial interest' is not defined by statute, but it is generally understood to mean 'suffered the greatest loss.'").

DeKalb also meets the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2004 WL 554810, at *2 (N.D. Ill. Mar. 19, 2004) (As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, "the court focuses on the typicality and adequacy requirements . . . .").

DeKalb acquired Methode securities during the Class Period, suffered damages as a result of the false and misleading statements made by Defendants and possesses claims against Defendants under the federal securities laws therefore satisfying the typicality requirements. *See Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) (finding lead plaintiff's claims typical because it purchased shares of securities at issue during the class period at prices inflated by defendants' fraudulent misconduct and suffered damages). DeKalb Opening Br. 9-11.

Additionally, as evidenced by the representations in its certification, *see* ECF No. 22-2, DeKalb has interests perfectly aligned with—and by no means antagonistic to—the Class and has selected and retained highly competent and experienced counsel —the Faruqi Firm— to litigate claims on behalf of itself and the Class. DeKalb has also served as a representative party on behalf of classes in other actions filed under the federal securities laws. *See Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 WL 193393, at *3 n.3 (N.D. Ill. Feb. 7, 2002) (movant's certification evidenced adequacy to serve as lead plaintiff). DeKalb Opening Br. 9-11.

At bottom, DeKalb is the movant with the greatest financial interest who satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should therefore be appointed lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

11

III.    **DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE MILLER FIRM AS LIAISON COUNSEL SHOULD BE APPROVED**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), DeKalb is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval.

As described in its Opening Brief, DeKalb has selected the Faruqi Firm to be Lead Counsel for the Class, a minority-owned and woman-owned law firm.[7]  The Faruqi Firm possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions.  *See* DeKalb Opening Brief 11-15; Ex. D, Faruqi Firm resume (ECF No. 22-4). Further, the Faruqi Firm currently serves as lead counsel in several prominent securities class actions.  *See, e.g., Wayne v. Maxeon Solar Techs., Ltd.*, No. 24-cv-03869-EMC (N.D. Cal.) (appointed sole lead counsel for the class); *Labelle v. Future FinTech Grp., Inc.*, No. 2:24-cv-00247-JXN-JSA (D.N.J.) (appointed sole lead counsel for the class); *Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Alms v. Luminar Techs., Inc.*, No. 6:23-cv-982-JSS-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 3:21-cv-09585-AMO (N.D. Cal.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[8]  Class members in securities class actions have diverse

---

[7]      *See* Ex. E (ECF No. 22-5).

[8]      *See* Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*, Law360 (July 16,

12

backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys.

The Miller Firm, liaison counsel, is similarly experienced in complex civil litigation, and securities class actions in particular. *See* Ex. F (ECF No. 22-6). The firm has a demonstrated track record of involvement in high-profile class actions. The Miller Firm has been repeatedly recognized by their peers and the courts and has served in a variety of counsel roles. The firm's knowledge of the Court will benefit DeKalb and the Class in a positive way.

## CONCLUSION

Accordingly, DeKalb respectfully requests that the Court: (1) appoint DeKalb as Lead Plaintiff for the Action; (2) approve its selection of the Faruqi Firm as Lead Counsel and the Miller Firm as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: December 10, 2024        Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:     */s/ James M. Wilson, Jr.*
        James M. Wilson, Jr.

James M. Wilson, Jr. (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

---

2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex Class Litigation*, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Robert W. Killorin (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff DeKalb
County Pension Fund and [Proposed] Lead
Counsel for the putative Class*

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
53 W. Jackson Blvd., Suite 1320
Chicago, IL 60604
Telephone: 312-332-3400
Facsimile: 312-676-2676
Email: mmiller@millerlawllc.com
        lfanning@millerlawllc.com

*Attorneys for [Proposed] Lead Plaintiff DeKalb
County Pension Fund and [Proposed] Liaison
Counsel for the putative Class*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed on December 10, 2024 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

By: _/s/ James M. Wilson, Jr._
James M. Wilson, Jr.

15