UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIE SALEM, Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) METHODE ELECTRONICS, INC., et al., ) ) Defendants. ) | No. 24 C 7696 Judge Sara L. Ellis |

**OPINION AND ORDER**

After Methode Electronics, Inc. ("Methode") experienced financial difficulties and Methode stockholders suffered losses on their investments, some stockholders filed two, separate putative class action lawsuits against Methode and some of Methode's executives for violations of federal securities laws. On November 7, 2024, this Court granted Plaintiffs' motions to consolidate the lawsuits. Now, the Court must resolve two pending motions for appointment as lead plaintiff and approval of lead plaintiff's selection of lead counsel. Both DeKalb County Pension Fund ("DeKalb") and City of Detroit General Retirement System, Genesee County Employees' Retirement System, and City of Monroe Employees' Retirement Systems (collectively, the "Michigan Retirement Systems") moved for appointment as lead plaintiff and for approval of their selections of lead counsel. Because a certification submitted by the Michigan Retirement Systems on the deadline for its lead plaintiff motion omitted critical transactions such that the Michigan Retirement Systems did not prove it had the largest financial interest in the outcome of this litigation or would be adequate lead counsel, whereas DeKalb properly showed it had the largest financial interest and will typically and adequately represent

the class' interests, the Court denies the Michigan Retirement Systems' motion and grants DeKalb's motion.

## BACKGROUND

On August 26, 2024, Marie Salem filed the instant lawsuit, alleging that Methode and some of its corporate executives violated federal securities law (the "Salem Action"). Salem sought to bring a class action "on behalf of all purchasers of Methode common stock between June 23, 2022, and March 6, 2024" (the "Salem Class Period"). Doc. 1 at 1.

On October 7, 2024, the City of Cape Coral Municipal General Employees' Retirement Plan filed a largely similar lawsuit, alleging that Methode and some of its corporate executives violated federal securities law (the "Cape Coral Action"). The City of Cape Coral Municipal General Employees' Retirement Plan sought to bring a class action "on behalf of a class of all persons and entities who purchased or otherwise acquired Methode common stock between December 2, 2021, and March 6, 2024" (the "Cape Coral Class Period"). Complaint, *Cape Coral Mun. Gen. Emps. Ret. Plan v. Methode Elecs., Inc.*, No. 24 C 9654 (Oct. 7, 2024), ECF No. 1.

The deadline for a motion for appointment as lead plaintiff in the Salem Action was October 25, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i) (directing that not later than 60 days after notice of the action is published in a widely circulated national business-oriented publication or wire, any member of the purported class may move to be appointed as lead plaintiff of the purported class); Doc. 26-1 (documenting that notice of the Salem Action was issued in Globe Newswire on August 26, 2024). On October 25, 2024, DeKalb and the Michigan Retirement Systems each moved for appointment as lead plaintiff and for approval of their selections of lead counsel.

DeKalb attested that it suffered losses of $724,440.17, expended $1,032,052.99 in net funds, purchased 23,402 net Methode shares during the Cape Coral Class Period, and purchased 30,040 total Methode shares during the Cape Coral Class Period. To support its motion, among other exhibits, DeKalb submitted a certification of proposed lead plaintiff, which included a chart of all its transactions purchasing and selling Methode stock during the Cape Coral Class Period. Doc. 22-2. DeKalb also attached a table summarizing its purchases and sales of Methode stock, at certain prices, during the Cape Coral Class Period. Doc. 22-3.

The Michigan Retirement Systems claimed to have suffered $812,789 in losses and to have purchased 27,527 Methode shares during the Cape Coral Class Period. To support its motion, the Michigan Retirement Systems attached certifications from each of the Michigan Retirement Systems attesting to all the transactions that each of the Michigan Retirement Systems had engaged in for Methode stock, and charts documenting these transactions. Doc. 26-2. While the certifications from the City of Detroit General Retirement System and the City of Monroe Employees' Retirement System included all of the transactions from the Cape Coral Class Period, the certification from the Genesee County Employees' Retirement System only included the transactions from the shorter Salem Class Period. As a result, the total transactions detailed on each of the Michigan Retirement Systems certifications do not match the Michigan Retirement Systems' allegation in its motion that it suffered $812,789 in losses and purchased 27,527 Methode stock during the Cape Coral Class Period. In addition to these certifications, the Michigan Retirement Systems also attached a table containing all of the Michigan Retirement Systems' transactions involving Methode stocks during the Cape Coral Class Period, totaling $812,788.57. Doc. 26-3. Michigan Retirement Systems did not include any certification with the table.

On November 4, 2024, the Michigan Retirement Systems submitted a declaration from Danielle Myers, counsel for the Michigan Retirement Systems, attesting that she had attached "Genesee County Employees' Retirement System's Certification with Schedule A reflecting transactions in the" Cape Coral Class Period. Doc. 40 at 2. She also attested that the Michigan Retirement Systems' motion to be appointed as lead plaintiff reflected the transactions in her attachment and that Michigan Retirement Systems' loss remained $812,788.57. *Id.* As she stated in her declaration, Myers attached a certification from Genesee County Employees' Retirement System that included all of Genesee County Employees' Retirement System's transactions involving Methode stock in the Cape Coral Class Period. Doc. 40-1.

On November 7, 2024, the Court consolidated the Salem Action and the Cape Coral Action.

## LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") "provides guidelines for the appointment of a lead plaintiff" and lead counsel in private securities class action litigation. 15 U.S.C. § 78u-4(a)(3); *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221, at *1 (N.D. Ill. July 19, 2019). If a member of the purported class seeks to serve as the lead plaintiff, the Court must "appoint as lead plaintiff the member or members of the purported plaintiff class that [it] determines to be most capable of adequately representing the interests of class members," i.e., the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), (a)(3)(B)(i). "The PSLRA establishes a rebuttable presumption that the 'most adequate plaintiff' is the 'person or group of persons' who 'has either filed the complaint or made a motion in response to a notice,' 'has the largest financial interest in the relief sought by the class,' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"

4

*Mortimer*, 2019 WL 3252221, at *1 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "This presumption may be rebutted, however, if a member of the purported class establishes that the 'presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The PSLRA "further provides that the 'most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(v)).

## ANALYSIS

Looking to the elements of the rebuttable presumption, the Court first concludes that DeKalb has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA does not define "largest financial interest," however courts generally understand it to mean "suffered the greatest loss." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 C 2394, 2019 WL 6052399, at *4 (N.D. Ill. Nov. 15, 2019). Most courts consider the following factors when assessing whether a party has the largest financial interest:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*Colwell v. Exicure, Inc.*, No. 21 C 6637, 2023 WL 2572454, at *3 (N.D. Ill. Mar. 20, 2023) (quoting *Mortimer*, 2019 WL 3252221, at *1).

Although courts are not uniform in their approach to these circumstances, the majority of courts refuse to consider modifications to certifications or claimed losses made after the PSLRA lead plaintiff motion deadline. *See, e.g.*, *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("[T]he court will not consider the candidate's amendments of their amount of financial loss made after the filing deadline."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d. 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the [PSLRA deadline]."). *But see Lim v. Hightower*, No. 23 C 1454, 2023 WL 7979869, at *2 n.4 (N.D. Ohio Nov. 16, 2023) (finding that the court could consider a revised loss chart, after the original loss chart contained inadvertent errors, as the revised loss chart contained the same transactions initially reported). The reasoning behind these majority decisions is to preserve the strict timeliness requirements of the PSLRA. *See Singer*, 2002 WL 31356419, at *3.

With this background in mind, the Court follows the majority approach and refuses to consider the Michigan Retirement Systems' modified certification filed after the PSLRA deadline. Using only the transactions that Michigan Retirement Systems certified occurred on the PSLRA lead plaintiff motion deadline, the Michigan Retirement Systems suffered approximately $618,536.50 in losses and DeKalb suffered approximately $724,440.17 in losses. *See* Docs. 22-2, 22-3, 26-3. As DeKalb suffered the largest loss, based on the evidence fairly before the Court, the Court finds that DeKalb has the largest financial interest. *See Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *3 (N.D. Ill. Oct. 8, 2019) (noting that among the four factors courts consider in determining the "largest financial interest," most courts agree that "the approximate losses suffered[ ] is the most salient factor").

Similarly, the Court also finds that the Michigan Retirement Systems would not be an adequate lead plaintiff. At this phase, in order to meet the requirements of Rule 23, the lead plaintiff must be typical and adequate. *See Hedick*, 2019 WL 4958238, at *8 (N.D. Ill. Oct. 8, 2019) ("The typicality and adequacy elements are the relevant [Rule 23] factors to the appointment of a lead plaintiff."). Although the Michigan Retirement Systems' mistake appears inadvertent, a careful review of its certifications would have shown that they did not match the claimed losses in the motion or loss chart that the Michigan Retirement Systems also attached to the motion. Courts have found that failure to discover and correct such errors demonstrates that a lead plaintiff will not adequately represent the class. *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (accumulating cases).

At this stage of the litigation, DeKalb has demonstrated that it would be both a typical and adequate lead plaintiff. A lead plaintiff's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation omitted). DeKalb's claims are typical as they arise from the same events and course of conduct concerning Methode's management and financial difficulties that gives rise to the claims alleged by the other putative class members. In order to meet the adequacy standard, a lead plaintiff must (1) have claims that "are not antagonistic or in conflict with those of the class," (2) have a "sufficient interest in the outcome of the case to ensure vigorous advocacy," and (3) be "represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Hedick*, 2019 WL 4958238, at *9 (citation omitted). DeKalb has represented that it does not have any adverse interests and that it possesses a strong interest in the outcome of this litigation based on its financial losses. *See* Doc. 19 at 10–11. No class member

7

argues otherwise. Further, the Court is satisfied that Faruqi & Faruqi LLP, DeKalb's selection for lead counsel, has the necessary competence and expertise to vigorously prosecute the litigation on behalf of all putative class members. *See, e.g.*, *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 411 (E.D. Penn. 2021) ("[T]here is no question that Faruqi & Faruqi are qualified and experienced in securities class actions."); *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) ("Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. . . . Faruqi & Faruqi achieved successful outcomes in many of these cases.").

Further, for the same reasons, the Court approves DeKalb's selection of Faruqi & Faruqi LLP as lead counsel. *Cf. Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-00815-TLS-MGG, 2017 WL 1207158, at *2 (N.D. Ind. Apr. 3, 2017) ("In approving the lead plaintiff's selection of counsel, the court review[s] the selection deferentially and [will] only intervene if it is 'necessary to protect the interests of the plaintiff class.'" (citation omitted)). The Court also approves DeKalb's selection of Miller Law LLC as liaison counsel, as Miller Law LLC similarly is qualified and experienced in the area of securities litigation. *See, e.g.*, *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *5 (N.D. Ill. May 26, 2011) ("Miller Law is a Chicago-based firm that has substantial experience in class-action, multi-district, and other complex litigation, particularly in the Northern District of Illinois . . . . Miller Law has the requisite experience to serve as efficient and professional liaison counsel.").

## CONCLUSION

For the reasons stated above, the Court grants DeKalb's motion to be appointed as lead plaintiff [18] and approves DeKalb's choice of lead counsel and liaison counsel. The Court

8

denies the Michigan Retirement Systems' motion to be appointed as lead plaintiff and choice of lead counsel [26].

Dated: February 3, 2025

                                                               SARA L. ELLIS
                                                               United States District Judge