## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DEKALB COUNTY PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-07696 |
| | District Judge Sara L. Ellis |
| Plaintiff, | |
| | Magistrate Judge M. David Weisman |
| vs. | |
| METHODE ELECTRONICS, INC. DONALD W. DUDA, and RONALD L.G. TSOUMAS, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Zachary Fardon (IL Bar No. 6292156)
**KING & SPALDING LLP**
110 N Wacker Drive
Suite 3800
Chicago, Illinois 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
zfardon@kslaw.com

Jessica P. Corley (*pro hac vice*)
Brandon R. Keel (IL Bar No. 6300165)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
jpcorley@kslaw.com
bkeel@kslaw.com

*Counsel for Defendants Methode Electronics, Inc.,
Donald W. Duda, and Ronald L.G. Tsoumas*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     THE SAFE HARBOR PROTECTS THE FORWARD-LOOKING STATEMENTS. ....... 2

      A.     Plaintiff's Opposition confirms that it challenges forward-looking statements................2

      B.     Plaintiff's Opposition fails to dispute that meaningful cautionary language accompanied each challenged forward-looking statement. ................................................5

II.     THE CHALLENGED PUFFERY AND OPINIONS ARE NOT ACTIONABLE. ........... 7

III.     PLAINTIFF FAILS TO PLEAD FALSITY WITH PARTICULARITY........................... 9

IV.     PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER. ............... 13

V.     PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION. ...................... 14

VI.     PLAINTIFF CONCEDES THAT IT HAS NOT PLED SCHEME LIABILITY............. 15

CONCLUSION.............................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ........................................................................5

*Alizadeh v. Tellabs, Inc.*,
  2015 WL 557249 (N. D. Ill. Feb. 9, 2014) ...............................................................8, 9

*Amalgamated Bank v. Coca-Cola Co.*,
  2006 WL 2818973 (N.D. Ga. Sept. 29, 2006) ...........................................................4

*Blatt v. Corn Prod Int'l, Inc.*,
  2006 WL 1697013 (N.D. Ill. June 14, 2006) .............................................................8

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
  2012 WL 1030474 (N.D. Ill. Mar. 27, 2012) .............................................................15

*Bondali v. YUM! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) ..............................................................................2, 7

*In re ChannelAdvisor Corp. Sec. Litig.*,
  2016 WL 1381772 (E.D.N.C. Apr. 6, 2016) ..............................................................7

*Chew v. MoneyGram Int'l, Inc.*,
  2024 WL 4346522 (N.D. Ill. Sept. 30, 2024) ............................................................9, 12, 13

*In re Cisco Sys., Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013)............................................................4

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
  388 F. Supp. 2d 932 (S.D. Ind. 2005) .......................................................................12

*City of Livonia Emps. Ret. Sys. & Loc. 295/Loc. 851 v. Boeing*,
  711 F.3d 754 (7th Cir. 2013) ....................................................................................14

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
  2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024).............................................................15

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) ....................................................................................13

*Desai v. Gen. Growth Props., Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ........................................................................5, 6, 7

*Farhar v. Ontrak, Inc.*,
   714 F. Supp. 3d 1198 (C.D. Cal. 2024) ...................................................................3

*Garden City Emp.' Ret. Sys. v. Anizter Int'l, Inc.*,
   2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)..................................................10, 12

*In re Ibis Tech. Sec. Litig.*,
   422 F. Supp. 2d 294 (D. Mass. 2006) ......................................................................3

*Ind. State Dist. Council of Laborers and Hod Carriers Pension & Welfare Fund v.*
   *Omnicare, Inc.*,
   583 F.3d 935 (6th Cir. 2009) ...................................................................................8

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)................................................................................4, 5

*KBC Asset Mgmt. NV v. Discover Fin. Servs.*,
   2025 WL 976120 (N.D. Ill. Mar. 31, 2025)..........................................................4, 6

*In re Key Energy Servs., Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ...................................................................14

*Kolominsky v. Root, Inc.*,
   100 F.4th 675 (6th Cir. 2024) ..................................................................................7

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ...................................................................................5

*MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*,
   2006 WL 3542332 (N.D. Ill. Dec. 6, 2006)............................................................15

*In re Midway Games, Inc. Sec. Litig.*,
   332 F. Supp. 2d 1152 (N.D. Ill. 2004) ..............................................................3, 6, 7

*In re Netsolve, Inc. Sec. Litig.*,
   185 F.Supp.2d 684 (W.D. Tex. 2001).....................................................................12

*In re Nimble Storage, Inc. Sec. Litig.*,
   252 F. Supp. 3d 848 (N.D. Cal. 2017) .....................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................................9

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   895 F.3d 933 (7th Cir. 2018) .................................................................................14

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
   690 F. Supp. 3d 862 (N.D. Ill. 2023) ...................................................................4, 5

*Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v.*
    *Allscripts-Misys Healthcare Sols., Inc.*,
    778 F. Supp. 2d 858 (N.D. Ill. 2011) ................................................................2, 6, 8

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    673 F. Supp. 2d 718 (S.D. Ind. 2009) ......................................................................11

*Roth v. OfficeMax, Inc.*,
    2006 WL 2661009 (N.D. Ill. Sept. 13, 2006) ..............................................7, 13, 14

*Silverman v. Motorola, Inc.*,
    2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ......................................................5, 8

*In re SolarCity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................................3

*Sutton v. Bernard*,
    2001 WL 897593 (N.D. Ill. Aug. 9, 2001) ...............................................................11

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ........................................................4, 5, 8, 13

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .....................................................................................4

**Statutes**

15 U.S.C. § 78u-5 ...............................................................................................................4

**Other Authorities**

17 C.F.R. § 240.10b-5...........................................................................................................15

## INTRODUCTION

Plaintiff's Opposition ("Opp.") (Dkt. 63) does nothing to salvage its legally deficient claims, which fail as a matter of law under the PSLRA.[1] Indeed, the Opposition confirms precisely what Defendants said in their Opening Brief ("Defs.' Br.") (Dkt. 60): this is a classic case of fraud by hindsight where Plaintiff challenges forward-looking statements that are protected by the PSLRA safe harbor. In the first page of the Opposition, for example, Plaintiff describes this case as premised on projections about Methode's "future" that the Company proved unable to achieve. *See*, *e.g.*, Opp. at 1. Plaintiff similarly says this case is about Methode being unable to "translate" "EV awards" "into profits." *Id.* But those are quintessentially forward-looking statements, and Defendants made no guarantees that Methode would achieve its projections or be able to translate awards of new business into profits in the future. Rather, Methode regularly disclosed the uncertainty involved with new business awards, noting that "the full launch timing . . . could be anywhere in the range of 1 to 3 years" and, even if the launch were successful, the awards came with no guarantees—they were subject to numerous risks that could impact Methode's ability to achieve that revenue in the future. *See*, *e.g.*, Defs.' Br. at 4–5. Cases like this are regularly dismissed by courts in this Circuit and around the country. *See id.* at 1–2, 7–11, 13–18.

Plaintiff attempts to avoid dismissal by arguing that (i) a vague list of "Operational Issues" existed at some point during the class period, which Defendants knew or should have known would prevent Methode from achieving its projections; and (ii) Methode's risk factors were not meaningful because they spoke only to potential future risks, not matters already impacting the Company. *See*, *e.g.*, Opp. at 2. Neither argument helps Plaintiff's case. As to the former, Plaintiff continues to rely on its generic list of "Operational Issues" that lack any specificity, along with

---

[1] Unless otherwise indicated, capitalized terms have the meanings in Defendants' Opening Brief. Dkt. 60.

equally generic allegations from an employment lawsuit filed by a former executive who was at Methode for only a month during the class period. *Id.* at 2–3. The AC simply does not allege with particularity what information Defendants knew (and when and how they knew it) that would have demonstrated to them ***at the time the challenged statements were made*** that the "EV awards did not translate into [the] profits" Methode would "need to hit its CAGR target." *Id.* at 1.

As to the risk factors, Plaintiff ignores both the inherently forward-looking nature of risk factors and the very basis of Plaintiff's claims. The risk factors disclosed risks that could adversely impact Methode's operations in the future, including its ability to achieve its projections. Thus, the risk that Methode's results could be impacted by its "inability to attract or retain key employees and a highly skilled workforce," Defs.' Br. at 5, was *not*, as Plaintiff suggests, a representation that Methode was not presently impacted by employee turnover at all. Moreover, Plaintiff's claims are not based on a representation regarding the extent of Methode's employee turnover existing during the class period. Rather, Plaintiff challenges projections of future performance that it says Methode was unable to achieve due to staff turnover and other operational issues. But those are the exact risks Methode flagged for investors. Adopting Plaintiff's contention would strip the safe harbor of any effect. That is why, unsurprisingly, Plaintiff's contention has been soundly rejected in this District and elsewhere. *See, e.g.*, *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858, 875 (N.D. Ill. 2011); *see also Bondali v. YUM! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015).

## ARGUMENT

## I.     THE SAFE HARBOR PROTECTS THE FORWARD-LOOKING STATEMENTS.

### A.     Plaintiff's Opposition confirms that it challenges forward-looking statements.

Plaintiff does not (and cannot) dispute that it challenges numerous forward-looking statements under the PSLRA safe harbor. Plaintiff does, however, offer a half-hearted argument

that the safe harbor is inapplicable because "many of [the challenged] statements are actually statements of present or historic fact, or conveyed a mix of present and future information." Opp. at 14. To illustrate, Plaintiff says that Defendants "told the market . . . [t]hat Methode had strong sales with 'over $100 million.'" *Id*. at 1, 4, 9. Plaintiff further highlights Defendants' statements that Methode was "on track" to achieve future goals such as replacing sales from the roll-off of the GM program and achieving a 3-year 6% CAGR target. *Id*. at 1, 3–5, 8–10, 14–15, 17. Contrary to Plaintiff's contentions, however, these statements are all forward looking.

As an initial matter, Plaintiff is wrong in claiming that Defendants represented "[t]hat Methode had strong sales with 'over $100 million[.]'" *Id*. at 1, 3–4, 9. The actual statement to which Plaintiff refers referenced "strong ***award bookings*** of over $100 million," not actual sales. *See* AC ¶ 55 (emphasis added). These were awards of future business that, as Methode regularly disclosed, were not guarantees of future performance. *See* Defs.' Br. at 4–5. Moreover, Plaintiff does not allege that Methode did not actually have such bookings at the time, only that these statements were misleading because "those EV awards did not translate into profits." Opp. at 1. In other words, Plaintiff challenges only the forward-looking nature of these statements. *See In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1166 (N.D. Ill. 2004) ("statements regarding product release schedules or projected sales and earnings are forward-looking"); *see also In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 992 (N.D. Cal. 2017) (statement that company "expect[ed] Q4 bookings to be greater than Q3 bookings" was forward looking). Courts consistently acknowledge that statements of future sales, bookings, and contract awards are forward looking. *See In re Ibis Tech. Sec. Litig.*, 422 F. Supp. 2d 294, 312 (D. Mass. 2006) ("[D]efendants [have been] excused from liability for statements . . . predicting that [a company] would book orders for one to three [products] during [a fiscal year]."); *Farhar v. Ontrak, Inc.*, 714

F. Supp. 3d 1198, 1211 (C.D. Cal. 2024) (CFO's "statement that [his] Company was expected to meet the budgeted amount in [a certain] contract . . . [was] forward-looking because it alluded to an anticipated expectation of future operations").

As to the CAGR target, "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws." *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651 (N.D. Ill. 2020) (quotation omitted). Methode's CAGR target is undoubtedly forward looking under the PSLRA, as it is "a projection of . . . financial items" and "a statement of future economic performance[.]" 15 U.S.C. § 78u-5(i)(1)(A), (C); *see also In re Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *15 (N.D. Cal. Mar. 29, 2013) (CEO's "comment that he was looking for a future growth rate of 12% to 17% ostensibly [was] a forward-looking statement"); *Amalgamated Bank v. Coca-Cola Co.*, 2006 WL 2818973, at **5–6 (N.D. Ga. Sept. 29, 2006) (statement that defendant was "confident [it] would meet its 11%-12% annual EPS growth target[,]" was forward looking), *aff'd sub nom.*, *Selbst v. Coca-Cola Co.*, 262 F. App'x 177 (11th Cir. 2008).

The same is true for the related "on track" statements. "[A] company's statement that it is on track to achieve projections [is] a forward-looking statement entitled to safe harbor protection." *KBC Asset Mgmt. NV v. Discover Fin. Servs.*, 2025 WL 976120, at *12 (N.D. Ill. Mar. 31, 2025) (quotation omitted); *see also Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 862, 880 (N.D. Ill. 2023) ("To say that something is on track is an amorphous prediction about the future"); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (similar). That is because such statements "cannot meaningfully be distinguished from the future projection of which they are a part" and thus are entitled to the same protection. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009). Indeed, such statements "express[] only [D]efendants' continuing comfort

with the earlier . . . projection," "amount[ing] in essence to a reaffirmation of that projection." *Id.*
at 256. Likewise, "th[e] alleged mis-statement about [Methode] being 'on track' to [replace sales
from the roll-off of the GM center console program was] purely forward-looking." *Phoenix Ins.*,
690 F. Supp. 3d at 880.[2] And those "on track" statements, in any event, were entirely consistent
with the award amounts disclosed and the estimated impact of the GM roll-off—in other words,
the context shows the truthful basis of those statements. *See* AC ¶ 91; *see also* Dkt. 61-25 at 5
("Since the beginning of fiscal year 2021, we have won approximately $600 million in EV
awards."); *id.* at 10 ("So the program roll-offs, in total, we would expect around $150 million.").

**B.    Plaintiff's Opposition fails to dispute that meaningful cautionary language
accompanied each challenged forward-looking statement.**

Plaintiff next insists that, "even if forward-looking, Defendants' statements . . . [were] not
accompanied by meaningfully cautionary language and were made with actual knowledge that
they were false or misleading." Opp. at 15–17. But neither contention holds up under scrutiny.

"Cautionary language is meaningful if it puts an investor on notice of the danger of the
investment to make an intelligent decision about it according to her own preferences for risk and
reward." *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 844 (N.D. Ill. 2009) (quotation
omitted). To be meaningful under the safe harbor, cautionary language need not "expressly refer
to the risk that ultimately caused the projection to differ from the results" or provide "the *most*
helpful caution . . . possible." *Id.* at 845. (quotation omitted) (emphasis in original). Rather,
cautionary language is sufficiently meaningful if the speaker identifies "the principal contingencies

---

[2] Plaintiff's cases do not hold otherwise. *See Silverman v. Motorola, Inc.*, 2008 WL 4360648, at *10 (N.D.
Ill. Sept. 23, 2008) (no discussion of whether "on track" was forward looking); *Conagra Brands*, 495 F.
Supp. 3d at 653 (distinguishing *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 802, (N.D. Ill. 2017), where
challenged statements "did not include representations about the timeline"); *Avaya*, 564 F.3d at 255–56
(explaining *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008) involved "a specific
assertion about the current state of sales that could [have been] distinguished from the future projections").

that could cause actual results to differ from projections." *Id.*[3]

The risk factors here were meaningful. In fact, Methode's cautionary language "not only . . . highlight[ed] numerous business-specific risk factors, but [] also identif[ied] the very risk[s] Plaintiff[] allege[s] led to [Methode's] underperformance[.]" *Plumbers & Pipefitters*, 778 F. Supp. 2d at 875. Methode disclosed, among other things, that its results could be adversely impacted by: the "[t]iming, quality, and cost of new program launches"; the "[f]ailure to attract and retain qualified personnel"; and Methode's "[a]bility to keep pace with rapid technological changes[.]" *See* Dkt. 61-3 at 1, 6–13. Methode further warned extensively about risks associated with its strategic business transition, including cautioning that "new program launches require a significant ramp up of costs," yet "sales related to these new programs generally are dependent upon the timing and success of [the] customers' introduction of new products[,]" that financial results could be materially impacted if Methode was "unable to launch new products in a timely and cost-effective manner," or if "EV adoption rates in general and the take rate experienced by each of [its] OEM customers" varied from the assumptions in Methode's forecasts. Dkt. 61-22 at 8, 11. "To call those statements 'boilerplate' borders on the farcical." *Desai*, 654 F. Supp. 2d at 846. And "[n]umerous decisions in this district and elsewhere have dismissed Rule 10b–5 claims based on similar—and often less specific—cautionary language." *Midway*, 332 F. Supp. 2d at 1167.

Attempting to side-step that obstacle, Plaintiff suggests "that because Defendants knew that the identified risk factors were already occurring, the previously-described cautionary statements cannot be deemed meaningful." *Plumbers & Pipefitters*, 778 F. Supp. 2d at 876; Opp. at 5, 16. As another court in this District has already held, however, that "argument [is] unpersuasive." *Plumbers & Pipefitters*, 778 F. Supp. 2d at 876. Rightly so. Risk factors "warn an

---

[3] "By referring the audience to the factors discussed in [a company's] Form 10-K [or other SEC filings, a speaker can provide] a sufficiently meaningful cautionary statement." *KBC*, 2025 WL 976120 at *14.

investor of what harms *may* come to their investment[,]" and "are not meant to educate investors on what harms are currently affecting the company." *Bondali*, 620 F. App'x at 491. Thus, "cautionary statements are not actionable to the extent plaintiffs contend defendants should have disclosed risk factors 'are' affecting financial results rather than 'may' affect financial results." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 689 (6th Cir. 2024) (quoting *Bondali*, 620 F. App'x at 491); *accord In re ChannelAdvisor Corp. Sec. Litig.*, 2016 WL 1381772, at **5–6 (E.D.N.C. Apr. 6, 2016), *aff'd sub nom.*, *Dice v. Channeladvisor Corp.*, 671 F. App'x 111 (4th Cir. 2016).

Because the challenged forward-looking statements were accompanied by meaningful cautionary language, the safe harbor shields Defendants from liability as to those statements, irrespective of Defendants' alleged state of mind. *See Desai*, 654 F. Supp. 3d at 843–44.

## II. THE CHALLENGED PUFFERY AND OPINIONS ARE NOT ACTIONABLE.

Plaintiff also challenges a litany of puffing statements, such as those touting Methode's "***solid sales***" or "***strong performance***." AC ¶ 50; *see also, e.g., id*. ¶ 51 ("***another solid quarter of business awards***"); *id*. ¶ 53 (Methode "***pleased with the bookings***"); Defs.' Br. at 11–13.

Ignoring nearly all of those puffing statements, Plaintiff narrowly insists that "Defendants' statements that Methode 'had another very strong quarter of business awards,' and 'remain[s] on track to deliver [its] sales and earnings guidance for fiscal 2023,' etc., were specific and material assertions with objectively verifiable facts." Opp. at 17. Not so. As to the "strong quarter" statements, the adjective "strong" is "so vague, so lacking in specificity, [and] so clearly constitute[s] the opinion[ ] of the speaker, that no reasonable investor could find [any such statement] important to the total mix of information available." *Midway*, 332 F. Supp. 2d at 1164; *see also Roth v. OfficeMax, Inc.*, 2006 WL 2661009, at *4 & nn.3–4 (N.D. Ill. Sept. 13, 2006) (statements that "business [would] be strategically stronger" and that "sales and income should

increase substantially" deemed "merely unactionable puffery").[4] Plaintiff does not allege that Methode did not in fact obtain the amount of bookings or sales referenced in any challenged statement. To the extent that Plaintiff is challenging the subjective characterizations management added, those statements are classic inactionable puffery. So, too, are "statements indicating that a company is 'on track' to meet a certain goal," which, "without more, [are] inactionable puffery." *In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 854 n.8 (N.D. Cal. 2017).

Plaintiff's invocation of *Blatt v. Corn Products Int'l, Inc.*, 2006 WL 1697013 (N.D. Ill. June 14, 2006), does not compel a different conclusion. Opp. at 17.[5] There, the defendant predicted "improving operating margins and a [higher rate] of return on its capital," expected "that its U.S. sweetener prices [would] increase," and believed "the price increase [would] be sufficient to offset higher energy costs in the U.S. business." *Id.* at *2. Accordingly, the "the context of discussing specific factors that might affect profits and operating margins" tended to "show that [the] statements were . . . reasoned predictions of the future." *Id.* at *4. Here, however, none of the challenged puffing statements "conveyed a measurable prediction of results based on calculations or modeling." *Conagra Brands*, 495 F. Supp. 3d at 652 (distinguishing *Blatt*).

Plaintiff also challenges a host of inactionable opinions. Defs.' Br. at 12–13. But the AC

---

[4] *See also Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *12 (N. D. Ill. Feb. 9, 2014) ("statements that [company] would 'continue to do well' and that demand would grow [were] so vaguely optimistic as to be immaterial"); *Plumbers & Pipefitters*, 778 F. Supp. 2d at 872 ("statements that [it] was 'confiden[t] in [its] ability to deliver solid results,' and was 'in position to capitalize' on a significant market opportunity amount to nothing more than vacuous management speak; they are therefore not actionable") (second and third alterations in original); *Ind. State Dist. Council of Laborers and Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 943–44 (6th Cir. 2009) (statements that the defendant's "revenue and earnings growth outlook remain[ed] positive given [its] strong underlying fundamentals and [its] proven growth strategy" were immaterial) (internal quotations omitted).
[5] *Silverman v. Motorola, Inc.* is not to the contrary either, because the court simply ruled that "[t]he fact that the 'competitive' products [were] 'on track,' 'quite on track,' or 'keyed up,' would be material if in fact defendants knew that those products were not on track." 2008 WL 4360648 at *10. But Plaintiff has not sufficiently alleged that any challenged statement was false, much less that any Defendant was aware of such falsity.

"contains no particularized allegation that the speakers did not honestly hold the opinions they expressed." *Chew v. MoneyGram Int'l, Inc.*, 2024 WL 4346522, at *12 (N.D. Ill. Sept. 30, 2024); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong."). Nor has Plaintiff "adequately alleged that the opinion statements were misleading[,]" because it does not "allege with any particularity *when* and *how* defendants were or should have been aware that their optimistic opinions were unjustified." *Chew*, 2024 WL 4346522 at *12 (emphasis in original). And, to the extent that Plaintiff argues any Defendant failed to disclose unspecified facts regarding the accuracy of their opinions, Methode's SEC filings identified a litany of risk factors that provided any reasonable investor with ample context. *See* Defs.' Br. at 4–5, 9–10.

## III.     PLAINTIFF FAILS TO PLEAD FALSITY WITH PARTICULARITY.

Plaintiff neglects to "identify specific false or misleading statements" and "explicitly connect those statements to *factual allegations* demonstrating that they are false." *Alizadeh*, 2014 WL 2726676, at *5 (emphasis added). Contrary to Plaintiff's contention, that Defendants have attempted to identify each challenged statement and the reasons why such statements are inactionable, *see* Dkt. 61-1, is hardly a concession that Plaintiff sufficiently pled the falsity of any of those statements. In fact, Defendants were forced to guess regarding the specific language Plaintiff contends was false or misleading because Plaintiff never explained it.

Instead, Plaintiff points to (1) December 2021 statements that "Methode's automotive segment was growing and rapidly acquiring new business"; (2) December 2021 and March 2022 statements "tout[ing] the EV programs the Company had been booking"; (3) the June 2022 announcement and March 2023 reaffirmation of the 3-year CAGR target and "fiscal 2023 guidance of a diluted EPS range of $2.70 to $3.10"; and (4) statements concerning Methode's "operational

challenges." Opp. at 8–11. According to Plaintiff, these statements were false or misleading because Defendants "concealed the critical Operational Issues[,]" and those professed "Operational Issues were [allegedly] in existence when the challenged statements were made." *Id*. at 9, 11. That is hardly pleading with particularity as required by the PSLRA.

For instance, the vague "Operational Issues" Plaintiff concocts are confined to automative products (comprising one of Methode's four business segments) produced in the Monterrey, Mexico facility—one of nine such facilities Methode used across six countries. AC ¶ 28; Dkt. 61-35 at 16. Even if those vague allegations were deemed particularized (they are not), "[e]vents at one specific plant or with one individual customer are not enough to meet the PSLRA's heightened standard." *Garden City Emps.' Ret. Sys. v. Anizter Int'l, Inc.*, 2011 WL 1303387, at *23 (N.D. Ill. Mar. 31, 2011) (citation omitted). In other words, "[w]eaknesses in one . . . part of [Methode's] business would not necessarily render untrue positive statements about the company as a whole[,]" *id*., and Plaintiff does not explain how compartmentalized conditions in one facility contradicted or even undermined statements regarding Methode's projected future *overall* performance.

The principal basis for Plaintiff's allegation that Defendants *must have known* the challenged statements were false or misleading when made is Duda's September 7, 2023, statement that problems at Methode's Monterrey facility involved "latent operating inefficiencies that our early warning detected ***but we failed to mitigate***" due to "a delay in visibility of a problem." AC ¶¶ 104, 147; Opp. at 11. Plaintiff refers to this statement as a "Q3 2023 admission." Opp. at 11. But Plaintiff does not even have the timing right. Methode's "fiscal year end[s] on the Saturday closest to April 30" of the following year, so its first fiscal quarter runs from May to August, the second from August to November, and the third from November to February. Dkts. 61-19 at 9, 61-26 at 7. The September 7, 2023, statement occurred during Methode's fiscal Q2

2023. Thus, contrary to Plaintiff's contention, "Defendants' argument that the operational issues were not identified until the first fiscal quarter" is entirely "[]consistent" with Duda's statements, and Plaintiff's apparent misunderstanding of Methode's fiscal year does not establish otherwise. *See also* Defs.' Br. at 15–17 (citing Duda's statement that the issues "didn't become apparent until July [2023]" and that certain issues "manifested in the first quarter").

In any event, the September 2023 statement is not an admission of falsity. As Duda explained, "[t]he magnitude" of the issues "didn't become apparent until July" 2023 and it was only when Methode went "back and [did] a postmortem" that it found "there [were] issues" that were not remediated. AC ¶ 148. Plaintiff fails to explain how a September 2023 statement about issues that were not discovered until July 2023 can demonstrate that statements from 2021, 2022, or early 2023 were false or misleading when made. *See Sutton v. Bernard*, 2001 WL 897593, at *4 (N.D. Ill. Aug. 9, 2001) ("statements made at or after the end of the class period cannot be used to show that what was said earlier was false or misleading"); *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 740 (S.D. Ind. 2009) ("no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation") (quotation omitted), *aff'd* 679 F.3d 952 (7th Cir. 2012).

Plaintiff also attempts to create a diversion comprised of "accounts from former employees, including Methode's former CEO, Avinash Avula," to bolster its threadbare allegations of falsity. Opp. at 2–4, 6, 12. But these accounts do not establish that the challenged statements were false or misleading when made. First, the unnamed "former employees" supposedly suggest that "Methode's salaried personnel turnover" at Methode's Monterrey facility, "which [Plaintiff says] was the root cause of the operational problems plaguing the Company, began in earnest well before fiscal year 2024." *Id*. at 2, 4, 12. But, as discussed *supra*, the Monterrey plant is merely one of

Methode's nine facilities across six countries, *see* Dkt. 61-35 at 16, and "[e]vents at one specific plant . . . are not enough to meet the PSLRA's heightened standard." *Garden City*, 2011 WL 1303387, at *23 (N.D. Ill. Mar. 31, 2011) (quotation omitted). Moreover, Plaintiff cannot establish that the challenged statements were false or misleading based on vague allegations of "high" or "significant turnover." Opp. at 4, 12–14; *see, e.g., Garden City*, 2011 WL 1303387, at *27 ("The Court is left to guess what a 'significant decline' in sales is[.]"). Indeed, there are no allegations identifying with any specificity how this "high turnover" rendered any statement false or misleading when made. *See In re Netsolve, Inc. Sec. Litig.*, 185 F.Supp.2d 684, 696 (W.D. Tex. 2001) (allegations that a company's allegedly "high sales force turnover caus[ed] lost additional sales/revenue lack[ed] particularity because the plaintiffs d[id] not describe the degree of the lost sales/revenue, and d[id] not allege the basis for this purported problem"). And none of the unnamed former employees allege any facts suggesting what Defendants knew about this turnover or when.[6]

Second, as to Avula, Plaintiff acknowledges he did not join Methode until January 29, 2024, just over a month before the end of the class period. Opp. at 6. The AC provides no explanation as to what, if anything, he knows (or could know) about Defendants' knowledge of the alleged misstatements prior to joining Methode. And none of Avula's unproven allegations in an unrelated employment lawsuit provide any basis to assess whether the challenged statements were false and misleading at the time they were made. Moreover, while Plaintiff claims Avula alleged a whole host of "bad acts by Methode[,]" *id.*, "[Section] 10(b) and Rule 10b-5 do not impose liability for mere corporate mismanagement; they impose liability for securities fraud."

---

[6] *See also City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 945 (S.D. Ind. 2005) ("allegations based on witness testimony suffer[] from . . . lack of information establishing how or why such employees would have access to the information they purport to possess"); *Chew*, 2024 WL 4346522, at *20 (former employee allegations "contribute[d] little to an inference of scienter" where their "accounts [did] not even mention any of the individual defendants").

*Chew*, 2024 WL 4346522, at \*20. The alleged "bad acts" Plaintiff references do not amount to securities fraud. *See id*. Nor do they even relate to Plaintiff's allegations. *See*, *e.g.*, Opp. at 6–7 (alleging, *inter alia*, misuse of funds for the personal benefit of a former Company officer, misallocation of a petty cash fund, and an undocumented intercompany transfer loan).

## IV. PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER.

Plaintiff's Opposition raises five arguments in an attempt to cure its insufficient scienter allegations, but none passes muster. First, Plaintiff contends that "Defendants' [September 7 and December 7, 2023] admissions reflect information about operational inefficiencies in Methode's core business segment that management would have known, or recklessly disregarded, at the time of the misrepresentations." Opp. at 19. But, as explained herein and in Defendants' Opening Brief, there were no such admissions. *See* Defs.' Br. at 15–17; *supra* at 10–11.

Second, Plaintiff alleges that "senior executives . . . are presumed to know of facts critical to a company's core operations." Opp. at 20–21. But "courts in this district have declined to allow plaintiffs to use a must have known theory as an end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly." *Conagra Brands*, 495 F. Supp. 3d at 658. And "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019).

Third, Plaintiff argues that "[t]he departures of Methode's four top executives responsible for [its] transition into the EV market in such close proximity to the September 7, 2023, December 7, 2023, and March 7, 2024 disclosures support a strong inference of scienter." Opp. at 21–22. But Khoury's and Avula's departures "are [ir]relevant given that they are not named defendants in this action." *Roth*, 527 F. Supp. 2d at 803 n.14. "As for [Duda] and [Tsoumas], by [Plaintiff's] own allegations, neither defendant was terminated; both resigned." *Id*; AC ¶ 155. And Plaintiff has "not

cited authority supporting the proposition that an individual's resignation from a company is sufficient to create an inference—much less a strong one—of scienter as to that individual." *Roth*, 527 F. Supp. 2d at 803 n.14. To the contrary, Duda's and Tsoumas' orderly retirements (after longstanding service) lacked any indicia of scienter. *See* AC ¶ 155.

Fourth, Plaintiff attempts to establish scienter by insisting that "Defendants' performance-based incentive compensation gave Defendants a personal financial motive to pay close attention to the stock price and keep it artificially inflated." Opp. at 22–23. But that gambit is another dead end. "Without a motive to commit securities fraud, businessmen are unlikely to commit it." *City of Livonia Emps. Ret. Sys. & Loc. 295/Loc. 851 v. Boeing*, 711 F.3d 754, 758 (7th Cir. 2013). And "a generalized motive common to all corporate executives is not enough to establish scienter." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 939–40 (7th Cir. 2018). Here, the non-fraudulent inference is far more compelling. *See* Defs.' Br. at 22–23.

Finally, Plaintiff points to an SEC investigation "regarding material weaknesses in [Methode']s internal controls." Opp. at 3. But Plaintiff does not explain how an SEC investigation into possible material weaknesses in internal controls could possibly show scienter as to the challenged statements at issue here, which are not alleged to be misleading due to any internal control deficiencies. And, regardless, an ongoing SEC investigation does not "establish scienter without facts showing that a specific person knew of any purported wrongdoing." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 871 (S.D. Tex. 2016).

## V.      PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION.

Plaintiff claims it has adequately pled loss causation under two theories, but both fail. First, Plaintiff claims it has "satisf[ied] the materialization of the risk approach" because "[t]he undisclosed risks of the Operational Issues included missing and/or lowering earnings guidance and the CAGR target." Opp. at 23. But Plaintiff cannot travel under a "materialization of the risk

approach" when the very risk it alleges "later materialized" was clearly disclosed during the class period. *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2024 WL 4349289, at *9 (S.D.N.Y. Sept. 30, 2024) ("All of the alleged disclosures were materializations of . . . risks that Defendants expressly disclosed . . . . Plaintiff cannot now point to the materialization of those known risks to show loss causation.").

Second, Plaintiff claims it has "sufficiently pled loss causation under the 'fraud-on-the-market' theory" because Defendants' alleged "material misrepresentations . . . had the effect of artificially inflating Methode's stock price." Opp. at 24. But simply alleging that Methode announced it would suspend its forward-looking financial guidance and the stock price subsequently declined is insufficient to "allege[] a plausible link between the disclosures and the alleged fraud." *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *13 (N.D. Ill. Mar. 27, 2012) (distinguishing *In re Motorola Sec. Litig.* and noting that "even at the motion-to-dismiss stage, we must scrutinize the content of the alleged disclosure").

## VI. PLAINTIFF CONCEDES THAT IT HAS NOT PLED SCHEME LIABILITY.

The AC also contains references suggesting that Plaintiff might be attempting to plead a scheme liability claim under Rule 10b-5(a) or (c). Defs.' Br. at 24–25. But Plaintiff does not adequately plead any such claim, *see id.*, and now concedes as much. *See MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 at *3 (N.D. Ill. Dec. 6, 2006) ("failure to respond to . . . argument implies concession").

### CONCLUSION

For the reasons set forth in Defendants' Opening Brief and above, Defendants respectfully request that the Court dismiss the AC with prejudice.[7]

---

[7] Plaintiff's Section 20(a) claim should be dismissed because Plaintiff has not pled a predicate violation of Section 10(b). *See* Opp. at 25 n.15.

Dated: September 3, 2025

**KING & SPALDING LLP**

*/s/ Zachary Fardon*
By: Zachary Fardon (IL Bar #6292156)
110 N Wacker Drive, Suite 3800
Chicago, Illinois 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
zfardon@kslaw.com

Jessica P. Corley (*pro hac vice*)
Brandon R. Keel (IL Bar #6300165)
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
jpcorley@kslaw.com
bkeel@kslaw.com

*Counsel for Methode Electronics, Inc.,*
*Donald W. Duda, and Ronald L.G. Tsoumas*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

By: /s/ *Zachary Fardon*
Zachary Fardon