UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEKALB COUNTY PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> METHODE ELECTRONICS, INC., DONALD W. DUDA, and RONALD L.G. TSOUMAS, <br><br> Defendants. | No. 24 C 7696 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

Lead Plaintiff DeKalb County Pension Fund ("DeKalb") brings this case on behalf of itself and a putative class of others similarly situated who purchased securities in Methode Electronics, Inc. ("Methode") between December 2, 2021 and March 6, 2024 (the "class period"). DeKalb alleges that Methode and two of its officers, Donald Duda and Ronald Tsoumas, made false or misleading representations with regard to Methode's business operations, which caused Methode's stock price to be artificially inflated. DeKalb contends that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and t(a), and SEC Rule 10b–5, 17 U.S.C. § 240.10b–5. Defendants have now moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that DeKalb fails to specify which of Defendants' statements were false or misleading and explain why each individual statement is false or misleading, the Court dismisses the amended complaint without prejudice.

## BACKGROUND[1]

Methode designs, engineers, and manufactures custom-engineered solutions for original equipment manufacturers ("OEMs"), automobile manufacturers, and other companies. Its common stock is traded publicly on the New York Stock Exchange. During the class period, Duda served as Methode's president, chief executive officer, and board member while Tsoumas served as Methode's chief financial officer.

Methode has four operating segments: (i) automotive; (ii) industrial; (iii) interface; and (iv) medical. A significant portion of Methode's manufacturing operations take place at a facility in Monterrey, Mexico. Methode's automotive segment, which has historically generated the majority of the company's revenues, supplies electronic and electro-mechanical products to automobile OEMs or their suppliers. In November 2010, General Motors ("GM") awarded the automotive segment a center console program for multiple GM vehicle platforms. This program was critically important to Methode's business and, starting in 2014, was projected to add $100 million in revenue per year. The program initially exceeded this projection, generating $400.5 million in net sales in 2016; $382.94 million in net sales in 2017; $393.29 million in net sales in 2018; $355.11 million in net sales in 2019; $274.41 million in net sales in 2020; $299.2 million in net sales in 2021; and $271.12 million in net sales in 2022.

Starting in 2020, however, car manufacturers began shifting away from "designs featuring traditional buttons and knobs" and began implementing more "displays with control functions integrated into the display itself, such as touchscreen infotainment applications." Doc.

---

[1] The Court takes the facts in the background section from DeKalb's amended complaint and the exhibit attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

53 ¶ 31. As a result, Methode also began "transitioning away from its reliance on traditional integrated center stack units" and instead focused production on "more specialized components." *Id.* While this strategy would initially result in lower unit sales, Methode believed that these lost sales would be offset by higher margins on the more specialized components and other awards secured in the electronic vehicle space. Methode further believed that this strategy would allow the company to "diversify away from its dependence on GM." *Id.* ¶ 34. This transition also resulted in a "retooling" of the facility in Monterrey. *Id.* ¶ 35. During the transition, however, Methode began experiencing various "operational inefficiencies" that negatively impacted business and revenue growth. *Id.* ¶ 42. Specifically, the Monterrey facility began experiencing increased personnel and leadership turnover caused by the COVID-19 pandemic, as well as poor operational decisions, vendor issues, and supplier changes. This resulted in "production planning deficiencies, inventory shortages, and, ultimately, [the] botched execution of the Company's strategic plans." *Id.* ¶ 43.

Despite this, Defendants repeatedly reassured investors throughout the class period that Methode's automotive segment was growing and acquiring new business. Defendants also represented this transition away from the legacy center console business as a success. For example, Duda stated during a December 2, 2021 earnings call that Methode was "on track . . . to replace the sales from the roll off of this truck [center console program]" and estimated that margins would improve. *Id.* ¶ 36. He further represented that the new program was being effectively implemented at the Monterrey facility, which allowed Methode to keep costs down. Defendants also announced a three-year organic sales compounded annual growth rate ("CAGR") target of 6%, implying that Methode would reach approximately $1.385 billion in sales for fiscal year 2025.

Starting in March 2023, Methode began reporting a 3.9% decrease in net sales and a 10% decline in quarterly automotive net sales. Despite this, Defendants reaffirmed the CAGR target of 6% and informed investors that Methode had "a very strong pipeline in front of us." *Id.* ¶ 82. In June 2023, however, Defendants provided financial results and preliminary 2025 net sales guidance that fell well below the 6% CAGR target, blaming the poor results on "adverse impacts from program roll-offs and new program launches." *Id.* ¶ 90. Even so, Defendants still maintained that Methode was positioned to deliver significant sales and earnings growth in 2025. While Defendants also disclosed in a SEC filing that management had "identified a material weakness" related to revenue in the automotive segment, namely the failure to maintain effective review, approval, and validation controls, they confirmed that this material weakness did not result in any material misstatements on their consolidated financial statements. *Id.* ¶ 98.

In September 2023, Methode finally publicly acknowledged some of its operational challenges, stating in a press release that operational efficiencies had negatively impacted earnings and net sales. Duda later explained in an earnings call that these challenges started with employee turnover, poor operational decisions, and vendor issues, which then had a domino effect that led to other issues. However, Defendants reassured investors that corrective action plans were already in place and that they were confident that there would be an uptick in business. Duda reiterated this optimistic outlook in December 2023, stating that Methode's business model was healthy.

On March 7, 2024, investors "finally learned the full extent of Methode's operational challenges" when the company issued a press release announcing that the automotive segment generated only $139.7 million in net sales for the quarter. *Id.* ¶ 122. The press release withdrew Methode's prior financial guidance and growth outlook, announcing that Methode was taking

4

urgent actions to reduce costs. In an earnings call that same day, Defendants "noted a litany of issues still negatively impacting [Methode's] Monterrey facility" and stated that the company was continuing to experience increased costs. *Id.* ¶ 123. This resulted in the price of Methode common stock dropping from $21.04 per share to $14.49 per share, a 31% decline. By mid-June 2024, the price of Methode stock had fallen further to less than $10 per share, more than 80% below its class period high.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to

5

all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

On top of the pleading burden imposed by Rules 8 and 9(b), Congress further heightened the pleading standards on securities fraud claims when it enacted the Private Securities Litigation Reform Act ("PSLRA"). Congress created this standard to check pleading abuses in private securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007). In order to properly allege that the defendant misrepresented or omitted material facts, the PSLRA requires the plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). In pleading scienter, the PSLRA requires that the plaintiff, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). For an inference to be "strong," it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

## ANALYSIS

Defendants raise six principal arguments in the motion to dismiss, including that DeKalb failed to satisfy the PSLRA's heightened pleading standards because the amended complaint does not specifically identify which of Defendants' statements were false or explain exactly why

6

each statement is false.  This argument is dispositive, and the Court therefore does not address Defendants' remaining arguments at this time.

The PSLRA's heightened pleading standard requires a plaintiff not only to identify specific false or misleading statements, but also to explicitly connect those statements to factual allegations demonstrating that they are false.  *See, e.g.*, *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2012 WL 1068761, at *5 (N.D. Ill. Mar. 29, 2012) (plaintiff must "offer 'specific, contradictory information' known to [defendant]" to establish that each specific statement was false or misleading); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009) (dismissing complaint because it lacked "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made").  Given this, courts often dismiss "puzzle pleadings," which "improperly 'plac[e] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts.'" *In re Harley-Davidson*, 660 F. Supp. 2d at 984 (citation omitted).  This includes complaints that quote the defendant at length and then use a stock assertion that the statements were false or misleading.

For example, in *Conlee v. WMS Industries, Inc.*, No. 11 C 3503, 2012 WL 3042498 (N.D. Ill. July 25, 2012), the court dismissed a complaint wherein "the heart of the complaint, the section titled 'Defendants' False and Misleading Statements Made During the Class Period,' [was] a sixteen page mash-up of block quotes, snippets, parentheticals, and Lead Plaintiff's characterizations of alleged statements made by one or more Defendants." *Id.* at *4.  The court reasoned:

> Rather than simply lay out a given statement and then list the reasons it is false or misleading (as the PSLRA commands) Lead Plaintiff has laid the statements out in three chronological bunches (the statements made on September 21, 2010, those made on

7

> November 1, 2010, and those made on January 25, 2011). While in another context a simple chronological ordering might be appropriate, here the resulting pleading is less useful. This is because the statements, though contemporaneous, pertain to disparate subject matter. The net effect of the pleading's format is to leave the reader—whether Defendants or the court—jumping from page to page in an attempt to link the alleged statements to the background that supposedly makes them false or misleading.

*Id.* Similarly, in *Hughes v. Accretive Health, Inc.*, No. 13 CV 3688, 2014 WL 4784082 (N.D. Ill. Sept. 25, 2014), the court dismissed a complaint that consisted of "long block quotes from [defendant's] filings with the SEC" followed by the same boilerplate paragraph, repeated twelve times, listing four reasons why all of the statements were false or misleading. *Id.* at *5.

That is precisely what DeKalb has done here. DeKalb details the allegedly false or misleading statements throughout 71 paragraphs of the 201-paragraph amended complaint, organizing them in ten chronological sections (e.g., "December 2, 2021 Statements") rather than by subject matter. The at-issue statements, which are bolded and italicized, often appear within long block quotes from Methode's earnings calls, press releases, conferences, and SEC filings. At the end of each chronological section, DeKalb includes a boilerplate paragraph providing various reasons why the statements were false or misleading.[2] DeKalb does not link those reasons to any specific statement but rather alleges that they are all generally applicable to the bolded and italicized statements in that section. Additionally, these boilerplate paragraphs do not include specific factual allegations as support. Instead, the supporting facts appear scattered

---

[2] Specifically, at the end of sections II.A–III.B, DeKalb simply repeats the boilerplate assertion that all of the statements were materially false and misleading because Methode failed to disclose and/or misrepresented that (a) it lost highly skilled and experienced employees during the COVID-19 pandemic; (b) the transition away from traditional integrated center stack units was plagued by production planning deficiencies, inventory shortages, vendor and supplier problems; (c) the manufacturing systems at the factory in Monterrey suffered from a variety of logistical defects; (d) the launch of new EV programs was substantially delayed, preventing Methode from timely receiving revenue; and (e) Methode's representations about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. Sections III.C–D differ slightly, as DeKalb alleges that those statements were false and/or misleading because Methode failed to disclose that they were presenting an overly optimistic version of events.

throughout the amended complaint.[3] This is not sufficient because it leaves the Court and Defendants guessing as to why each specific statement is false or misleading.[4] *See, e.g.*, *Macovski v. Groupon, Inc.*, No. 20 C 2581, 2021 WL 1676275, at *6 (N.D. Ill. Apr. 28, 2021) (holding that plaintiff failed to adequately plead section 10(b) claim because he "left it to the defendants and to the Court to sort out the alleged misrepresentations and match them with the purportedly contrary facts" (citation omitted)); *Lauria v. Biosante Pharms., Inc.*, 968 F. Supp. 2d 951, 957 (N.D. Ill. 2013) ("The salient point is that the court cannot ascertain which allegations are meant to match up with the italicized/bolded portions of the complaint."); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 841 (N.D. Cal. 2000) ("It is not clear, however, which portion of ¶ 46(d) and (e) is meant to explain why the statement quoted from ¶ 45 is false or misleading. Moreover, there is no indication of the factual basis upon which plaintiffs make these assertions.").

DeKalb's approach to bolding and italicizing specific false and/or misleading statements only further exacerbates these issues. To start, some of the emphasized excerpts appear to be benign and undisputed. For example, DeKalb emphasizes a statement made by Tsoumas in 2022 that "auto is 67%, 68% of our business." Doc. 53 ¶ 68. Presumably, given that this language is bolded and italicized, it is one of the allegedly false or misleading statements. Yet DeKalb

---

[3] Even DeKalb seemingly concedes this point in its opposition brief and the attached exhibit, citing to a plethora of different paragraphs in the amended complaint to support its arguments that the at-issue statements were false and/or misleading. Doc. 63 at 11–12 (providing factual allegations to support the argument that the at-issue statements were false and misleading when made (citing Doc. 53 ¶¶ 9, 12, 44–47, 104, 116, 148–50)); *see also* Doc. 64-1 (providing factual allegations to support argument that statement in 2021 Form 8-K was false or misleading (citing Doc. 53 ¶¶ 12, 45, 104, 116, 137, 148–50)).

[4] DeKalb nevertheless argues in its response brief that "Defendants were able to list each statement alleged to be false and/or misleading and the reasons why in Exhibit 1 submitted with their Motion." Doc. 63 at 7. This is not accurate. Exhibit 1 does not include the reasons why each statement is allegedly false or misleading, nor does it include specific factual allegations from the amended complaint to support those reasons. Rather, the chart in Exhibit 1 simply copies the amended complaint's bolded and italicized excerpts and recites Methode's corresponding arguments for dismissal. *See generally* Doc. 61-1.

alleges elsewhere in the amended complaint that Methode's automotive segment generated "approximately 67% of total net sales as of 2022 fiscal year-end." *Id.* ¶ 151. The Court is left to guess whether DeKalb mistakenly included this language in the bolded and italicized passage, or whether it is indeed alleging that this language is false and/or misleading. On top of this, other statements appear multiple times throughout the amended complaint with inconsistent treatment. *Compare id.* ¶ 51 (emphasizing "***[W]e were encouraged by the diversity of awards across key applications . . . Our EV activity is being fueled by growth in our power distribution offerings where we leverage over 40 years of expertise to supply power products to various EV OEMs***"), *with id.* ¶¶ 31, 56 (not emphasizing the same language). To make matters worse, multiple emphasized statements include the very information that DeKalb alleges Defendants failed to disclose. For example, the amended complaint includes the bolded and italicized phrase: ***"our businesses continued to be impacted by the ongoing supply chain and logistics disruptions."*** *Id.* ¶ 50. But DeKalb goes on to allege that this very statement was false or misleading in part because Defendants failed to disclose that Methode was experiencing "supplier problems" and "logistical defects." *Id.* ¶ 54. Similarly, DeKalb alleges elsewhere that Defendants falsely stated that they were "working '***relentlessly'*** and '***diligently*** to mitigate' ongoing supply-chain challenges," while also claiming that the bolded language was false or misleading because Defendants failed to disclose "supplier problems." *Id.* ¶¶ 74–75. It is entirely unclear how Defendants could have failed to disclose supplier problems while simultaneously stating that they were relentlessly and diligently working to mitigate supplier problems. Overall, DeKalb's seemingly inconsistent and haphazard approach leaves the Court and Defendants without clarity as to which statements are actually alleged to be false and/or misleading and why.

10

Thus, the Court finds that DeKalb has not identified with specificity which statements it alleges are false and/or misleading, nor has it sufficiently explained the reasons why it believes each individual statement is false and/or misleading. The puzzle pleading approach employed here not only fails to satisfy the applicable pleading standards but would also lead to unnecessarily increased discovery costs down the line. *See Conlee*, 2012 WL 3042498, at *4–5 ("A vague and ill-formed complaint can lead to more expansive (and expensive) document production and unnecessarily lengthy depositions covering needless factual ground."). That said, the Court will afford DeKalb an opportunity to file a second amended complaint complying with the applicable pleading standards. *See id.* at *5 ("[W]here a complaint contains puzzle pleading, courts have recommended that Plaintiff should be required to streamline and organize the complaint before allowing it to serve as the document controlling discovery."); *Lauria*, 968 F. Supp. 2d at 959 (dismissing puzzle pleading but allowing plaintiffs the opportunity to amend). Although the Court expresses no opinion at this time on the merits of Defendants' remaining arguments, it cautions DeKalb to be cognizant of these arguments in amending the complaint so as to allow this litigation to move forward as expeditiously as possible.

## CONCLUSION

For these reasons, the Court grants Defendants' motion to dismiss [59]. The Court dismisses the amended complaint [53] without prejudice and gives DeKalb until March 20, 2026 to file a second amended complaint in conformity with this Opinion and Order.

Dated: February 3, 2026

_____
SARA L. ELLIS
United States District Judge